Bartlett *v.* Wilson.

--- ·•· ---

### S. S. BARTLETT *v.* JAMES WILSON AND TR.

*Taxation. Grand List. Defective Abstract of Personal List. Curative Statute. Listers. R. L. s. 331. Constitutional Law. Law of the Land. Due Process of Law.*

1. Where the defect in the grand list consists of something omitted by the listers, which the legislature might have dispensed with by a prior statute, such list may be legalized by a subsequent statute; but when the list is fatally defective in matter of substance affecting the taxpayer's rights, it cannot be cured by a retrospective law; thus, the defendant's name and list were omitted in the abstract of personal lists required by the statute—R. L. s. 331—to be lodged in the town clerk's office; the abstract was not signed, nor certified, nor authenticated by the listers, but merely endorsed "Personal Lists, 1881;" *Held,* that the grand list was illegal, and that it was not cured by a later act of the legislature declaring it valid.

Bartlett. v Wilson.

2. NOTICE TO TAXPAYER.  The notice required by the statute—R. L. s. 346—to be given to the taxpayer by the listers of the time and place for hearing grievances, will not cure defects in the abstract of personal lists lodged in the town clerk's office, as the one is a mere *notice*, the other an *assessment* or judgment.

3. ILLEGAL LIST.  PARTY GIVEN NO RIGHT OF APPEAL.  DOUBLING CLAUSE. The statute (R. L. ss. 292–6) requires that the listers, in making a quadrennial appraisal, shall return the list, with a certificate of their doings attached thereto, signed and verified by oath, to the town clerk's office, on or before the first Tuesday of July, and a person aggrieved by their action may, within three days, appeal to the board of civil authority.  The list was seasonably returned, but the certificate and oath were not attached until the next September.  The listers doubled their appraisal of the defendant's real estate; *Held*, that the list was illegal as to the defendant; for that (*a*) as it was made and certified, he was deprived of the opportunity of contesting it on appeal; (*b*) for that the listers doubled their quadrennial appraisal of his real estate, and that the list was not validated by a curative statute.

4. CONSTITUTIONAL LAW.  DOUBLING CLAUSE, R. L. s. 326.  That section of the statute is constitutional which directs the listers, in case a taxpayer wilfully omits to furnish the required inventory of his property to ascertain the amount thereof, and double it as a basis of taxation.

ACTION of assumpsit by the plaintiff as collector of taxes for the town of Brownington, to recover of the defendant taxes assessed on the grand list of said town for the years 1881 and 1882.  Plea, general issue.  Trial by jury, February Term, 1886, Orleans County, Ross, J., presiding.  Verdict and judgment for the plaintiff.  The case appears in the opinion.

*L. H. Thompson*, for the defendant.

To the personal list should have been appended the oath named in the statute.  R. L. s. 239.  The law requiring the filing of the alphabetical list of personal lists is mandatory. Cooley Tax. (1st ed.) 267 ; *Thames Manufacturing Co.* v. *Lathrop*, 7 Conn. 555 ; *Marsh* v. *Chestnut*, 14 Ill. 223 ; *Billings* v. *Detten*, 15 Ill. 218 ; *Reed* v. *Chandler*, 32 Vt. 285 ; *Houghton* v. *Hall*, 47 Vt., 333 ; *Brush* v. *Buker.*, 56 Vt. 143 ; *Cummings* v. *Holt*, 56 Vt. 384.  The quadrennial list of 1882 is invalid for the reason that the listers did not complete the list, as required by R. L. ss. 292–6.  The defendant never had any opportunity to be heard as to his real estate list, as provided by sections 297–8, R. L.  "The law hears before it

condemns." Powers, J., in *Quimby* v. *Hazen*, 54 Vt. 141; *Hibbard* v. *People*, 4 Mich. 126. The taxes were not made valid by the curative act, No. 234, Acts of 1882. *Exchange Bank Taxes*, 21 Fed. Rep. 101. The curative act could not affect those taxes assessed before its passage. *Tunbridge* v. *Smith*, 48 Vt. 648; Cooley Tax. 227, 265. The quadrennial list of 1882 is also invalid by reason of doubling the appraisal of defendant's real estate. The doubling clause only relates to the annual April list. The laws regulating the making of the quadrennial list do not require the taxpayer to file an inventory. The law should be construed liberally in favor of the taxpayer. Pott. Dwarris, 245, 257. The law known as the doubling act —R. L. s. 326—is unconstitutional and void. It is in direct conflict with the 14th Amendment of the U. S. Constitution and 9th Article of the Vermont Constitution.

Again, chap. II., sec. 6, of the Constitution of Vermont, provides that the legislative, executive and judicial departments shall be separate and distinct, so that neither exercise the powers properly belonging to the other.

By secs. 326 and 227 of Revised Laws, persons are subjected to penalties, punishment and forfeiture of goods without the intervention of the judiciary department of the government; and hence, on this ground the doubling law is void.

One cannot be deprived of his property without " due process of law," " without a regular trial, according to the course and usage of the common law." 1 Kent Com. (11th ed.) 590, 600; *Hoke* v. *Henderson*, 4 Dev. (N. C.) 15; 3 Story Const. 661; 4 Hill, 146; Works of Daniel Webster, vol. 5, p. 486; 1 Bl. Com. 44; 2 Story Const. ss. 1934, 1944; Cooley Tax. 261; 44 Ill. 278; *Clayton* v. *Chicago*, 44 Ill. 281; *Town of Wauwatosa* v. *Gunyon*, 25 Wis. 282. But by this statute power is delegated to listers to impose penalties, forfeitures and punishments.

The law is also unconstitutional because it provides for two unequal methods of taxation on the same class of property and persons. *Taylor* v. *Porter & Ford*, 4 N. Y. 140; *State* v.

*May*, N. J. L. 39–43 ; *McCormick* v. *Fish*, 14 Minn. 264 ; *State* v. *Allen*, 2 McCord (Law) 55–61 ; *McComb* v. *Bell*, 2 Minn. 309 ; *Ryan* v. *State*, 5 Neb. 280 ; *People* v. *Berberrich*, 11 How. Prac. Rep. 311 ; *Baker* v. *Kelley*, 11 Minn. 499 ; *Saco* v. *Wentworth*, 37 Me. 165 ; *State of Tennessee* v. *Burnett*, 6 Heisk. (Tenn.) 189 ; *State of Maine* v. *Doherty*, 60 Me. 504 ; *Quinn* v. *Hurlburt*, 52 Vt. 363 ; *State* v. *Peterson*, 41 Vt. 523.

*J. C. Burke*, for the defendant.

The grand list is invalid, because the listers did not file a personal list, as required by section 331 R. L. The defendant's name was not on the paper filed, and hence the case stands as though no attempt had been made to comply with said section of the statute. Sedgw. Stat. Law, 308, 368 ; BARRETT, J., in *Crosby* v. *School District*, 35 Vt. 623, 630 ; *Briggs* v. *Georgia*, 15 Vt. 72 ; *Ayers* v. *Moulton*, 51 Vt. 115 ; *Veasie* v. *China*, 50 Me. 518 ; *Roberts* v. *Downing*, 21 Vt. 441.

The grand list of 1882 is invalid by reason of failure on the part of the listers to return the quadrennial list to the town clerk's office with a certificate verified by oath, as required by section to 296. *Walker* v. *Burlington*, 56 Vt. 131 ; *Myers* v. *Moulton*, 51 Vt. 115 ; *Rowe* v. *Hubell*, 50 Vt. 637 ; *Houghton* v. *Hall*, 47 Vt. 333 ; *Tunbridge* v. *Smith*, 48 Vt. 648.

A void tax cannot be revived into a legal existence by an act of the legislature. 1 Kent Com. (5th ed.) 455 ; *Tunbridge* v. *Smith*, 48 Vt. 648 ; *Coffin* v. *Rich*, 45 Me. 507 ; *Rich* v. *Flanders*, 39 N. H. 304. Section 326, R. L., known as the doubling clause, allows penalties to be imposed by a ministerial officer without a hearing, and is unconstitutional. Cooley Tax. 313 ; Blackwell Tax Titles, 30 ; *Newall* v. *Whitingham*, 58 Vt. 341 ; *Scammon* v. *Chicago*, 44 Ill. 269, 278 ; *Clayton* v. *Chicago*, 44 Ill. 286 ; *Binger* v. *Caston*, 1 McMullen, 410, 420 ; *McCormick* v. *Commonwealth*, 14 Me. 252 ; *State* v. *Allen*, 2 McCord, 55 ; *Drexel* v. *Commonwealth*, 46 Penn. St.

*Edwards, Dickerman & Young,* for the plaintiff.

Section 326, R. L., known as the doubling clause, is not in conflict with the Constitution. The principle involved received a practical construction in this State for forty-four years from March, 1797, to November, 1841. During these years the statutes provided: " And the said listers shall add to said list two-folds, for the whole polls, ratable estate and property, of such persons as shall not have exhibited or delivered lists as before directed, as a penalty on such persons for their neglect, who shall be liable to pay rates or taxes, according to such two-folds. * * * And the listers shall add the sum total of such two-folds to the said general list." Compiled Laws, vol. 2, p. 166; Slade's Compilation (1824), p. 391; Rev. Sts. (1839), p. 541; Session Laws (1841), No. 16.

During all this time the law was administered, and there is no case that intimates a doubt as to the validity of taxes assessed on lists made by two-folding, or as to the constitutionality of the statutes. This subject was twice before the court in *Henry* v. *Edson*, 2 Vt. 499; and in *Howard* v. *Shumway*, 13 Vt. 358, and neither counsel nor court express a doubt as to the validity of the list or tax upon a list, made by two-folding.

Questions arising under the Constitution, settled by a long and uniform practice, and sanctioned by one judicial decision, should be considered at rest. WILLIAMS, Ch. J., in *State* v. *Bosworth,* 13 Vt. 413. The construction of the Constitution by the legislature as given in their acts, ought to have great weight, and not be overruled, unless manifestly erroneous. *Kendall* v. *Kingston,* 5 Mass. 533; *Portland Bank* v. *Apthorp,* 12 Mass. 257; *Adams* v. *Howe,* 14 Mass. 345; *Commonwealth* v. *Bank,* 5 Allen, 431; *Holmes* v. *Hunt,* 122 Mass. 516; Opinion of Supreme Court, 126 Mass. 594. This same question was passed upon by the Supreme Court of South Carolina in the year 1800, in case of *Butler* v. *Bailey,* 2 Bay, 244.

The S. C. statute was passed in 1788, and " imposed double taxes on all persons who should refuse or neglect to make a

due return, on oath, of all their taxable property, and authorize the assessors to make the said assessments according to their judgments, and the best information they can get of a defaulter's property."

The court said: "That this court had no right to interpose between the collectors of public revenue and the state treasurers. No such power was given by the Act of 1788, nor *was there any principle of public law to warrant such an interference.*" See *Newell* v. *Whitingham*, 58 Vt. 341; *State* v. *Apgar*, 31 N. Y. 359; *Charleston* v. *Middlesex*, 101 Mass. 87. The same principle is sustained in Pennsylvania. *Fox's Appeal*, 4 Atl. Rep. 149; 112 Penn. Stat. 337, 357.

The same principle of increasing the taxpayer's list or tax for refusal to make return, or for making a false return of his taxable property, has been sustained by the following cases and authorities. Cooley Tax, 261, 314; *Doll* v. *Evans*, 11 Am. Law Reg. 315; *Biddle* v. *Oaks*, 59 Cal. 94; *Lincoln* v. *City of Worcester*, 8 Cush. 63; *Otis Co.* v. *Inhabitants of Ware*, 8 Gray, 509; *State* v. *Hamilton*, 5 Ind. 310; *Boyer* v. *Jones*, 14 Ind. 354; *Lansville R. R. Co.* v. *State*, 25 Ind. 177; *State* v. *Oashoe*, 7 Nev. 83; *Pomery Salt Works* v. *Davis*, 21 Ohio St. 555; *Genius* v. *Auditor*, 18 Ohio St. 534; *Toll Bridge Co.* v. *Osborn*, 35 Conn. 7; *Weber* v. *Reinhard*, 73 Penn. St. 373; *Butler's Appeal*, 73 Penn. St. 448; *Herrick* v. *Randolph*, 13 Vt. 529; *Bellows* v. *Weeks*, 41 Vt. 590. The above cases are sufficient authorities for sustaining the principle of this clause of our statute. The grand lists, regular and legal upon their face, are conclusive as to the legality of the defendant's list, *under the general issue.* *Wilson* v. *Seavey*, 38 Vt. 221; *Braley* v. *Burnham*, 47 Vt. 717. If the defendant wished to test the legality of any antecedent proceeding he should have set it up by plea or notice. The defendant is in no position to make the objection that his name was omitted from the personal list, when he had personal notice of his assessment, and of the time and place for hearing grievances, in season to secure an appeal, after neglecting to

furnish his inventory. *Howard* v. *Shumway, supra; Brock* v. *Bruce,* 58 Vt. 261. The curative statute of 1882 legalized all the lists and taxes involved in this case. *Bellows* v. *Weeks, supra; State* v. *Apgar, supra; People* v. *Mitchel,* 45 Barb. 208 ; *Walpole* v. *Elliott,* 18 Ind. 258 ; *Lewis* v. *Eastford,* 44 Conn., 477 ; *Waters* v. *Bacon,* 8 Mass. *472 ; *Locke* v. *Dane,* 9 Mass. 363 ; *Locke* v. *New Orleans,* 4 Wall. 172 ; *Sturgis* v. *Carter,* 114 U. S. 511 ; *State* v. *Newark,* 27 N. J. L. 185–195 ; *State* v. *Apgar,* 31 N. J. L. 360 ; *State* v. *Union,* 33 N. J. L. 350–4 ; *State* v. *Bergen,* 34 N. J. L. 440 ; *State* v. *Jersey City,* 37 N. J. L. 42 ; *Schenley* v. *Commonwealth,* 26 Penn. St. 29–56 ; Story, J. in *Wilkinson* v. *Leland,* 2 Pet. 627 ; *Watson* v. *Mercer,* 8 Pet. 88, 108 ; *Barnett* v. *Barnett,* 15 S. & R. 72.

The opinion of the court was delivered by

Powers, J. The plaintiff, as collector of taxes for the town of Brownington, seeks to collect sundry taxes assessed against the defendant on the grand list of that town for the years 1881 and 1882. The defendant urges sundry objections to both said grand lists, claiming that both are illegal as bases for taxation, some of which we are required to notice.

The case shows that the only attempted compliance with sec. 331, R. L., requiring the listers to lodge in the town clerk's office, on or before April 25; the personal lists of all taxpayers, was a paper purporting to be an alphabetical list of the personal lists of persons therein named which was not signed, certified, or authenticated in any manner by the listers, but bore an endorsement, " Personal Lists, 1881," on the back thereof. The defendant's name and list were wholly omitted from this paper, but in the annual grand list of that year, completed and filed on the 15th day of May, the defendant's list was made up by doubling the listers' appraisal of his real estate and his assessment for money on hand, debts due, etc.

On or before May 3d, the listers left at the defendant's dwelling-house a written notice that he was assessed for debts

due, etc., and of the time and place where they would hear persons aggrieved by their assessments.

On the 27th day of October, 1882, the legislature passed an act providing that the grand lists of the town of Brownington for the years 1881 and 1882 as to all taxes assessed thereon, and to be assessed on said list of 1882, are declared legal and valid.

The effect of legislation of this character upon illegal grand lists was considered by this court in the case of *Smith* v. *Hard*, *ante*, heard with this case. It was there held that if the thing omitted to be done by the listers, and which constitutes the defect in the proceedings was a thing which the legislature might have dispensed with by a prior statute, it might equally well dispense with it by a subsequent or retrospective statute.

The paper purporting to be the personal list in the year 1881 was not made in compliance with sec. 331, R. L. It was even more defective than a like document described in *Smith* v. *Hard*, *ante*. The defendant's name and list were entirely omitted, so his personal list was, in fact, never lodged at all in the town clerk's office.

It is argued that the written notice left at the dwelling-house of the defendant answered the requirements of the statute, but we cannot so hold. The personal list required to be lodged in the town clerk's office is an assessment judicially fixed by the listers, of which all taxpayers may and must take notice. The written notice required by the statute to be given to persons assessed for money, etc., is a mere *notice*, not an *assessment*. The statute does not require the listers to inform such persons of the amount for which they have assessed them, but merely the fact that an assessment of that character has been made, and of the time and place for hearing grievances. This notice can only have the legal effect given it by the statute, and cannot, upon sound principles, be construed as an assessment in fact. The personal list is the judicial determination of the listers of the amount of the taxpayer's personal estate that

Bartlett *v.* Wilson.

should enter into the annual grand list to be completed in May. Notice of this assessment or judgment must be given to the taxpayer; and the listers in the first instance, and the selectmen, on appeal, are constituted the courts to hear his grievances. In this case no judgment fixing the defendant's personal list was ever passed by the listers in legal form, and thus he never had occasion for appearing before them to be heard.

Following the reasoning of *Smith* v. *Hard*, it is clear that the defendant's grand list for the year 1881 was fatally defective in a matter of substance which affected his rights; and thus the legislature had no power to cure the defect by the Act of 1882.

No defects in the annual grand list for 1882, completed on the 15th day of May, are pointed out, and such list is to be treated as valid. But it is insisted that the quadrennial list of real estate made in 1882, and which entered into the list upon which some of the taxes of that year now sued for were assessed was illegal, and therefore the taxes assessed upon the grand list, made up in part of it, are not collectible.

The law required the listers, in 1882, to appraise the taxable real estate in each town, and return the list thereof to the town clerk's office on or before the first Tuesday in July, and to attach to such list so returned a certificate signed by a majority of the listers, and verified by oath in the following form: "We do solemnly swear that we have set down all the real estate situated in the town of                according to the best of our information, and we have appraised the same at its just value in money."

A subsequent section provides that a person aggrieved by the appraisal of the listers may, within three days after the first Tuesday in July, appeal to the board of civil authority for relief in the premises.

In this case the certificate and oath above referred to were not attached to the quadrennial appraisal until September 14, 1882, although the evidence tended to show that such appraisal, in fact, was lodged in the town clerk's office as early as July 1st.

This quadrennial appraisal of real estate is to stand for four years; and it is clear that the rights of taxpayers are quite as deeply concerned as in the case of their personal lists. The appraisal, as made by the listers, and completed and returned to the town clerk's office, is a determination of the listers as to the value of each taxpayer's real estate, which will conclude him unless he can change it on a hearing before the civil authority. No man's property can be taken from him under the guise of taxation, or otherwise, for the public use, unless he has the opportunity to be heard in the premises. In this case the defendant had no opportunity for such hearing. There was no legal appraisal in the town clerk's office that affected his rights. He was not bound to notice a document that bore no attestation of its character and no verification of its correctness.

In this particular case the quadrennial appraisal was, for a further reason, void as to the defendant, as the listers doubled their appraisal of his real estate, and thus, to this extent, exposed him to the payment of twice as much tax as other citizens were liable to pay. This was clearly illegal. No list can be doubled except such as the taxpayer, in the first instance, is called upon to make himself. He has no part in making or returning the quadrennial list, and no laches can be imputed to him in relation to it.

We hold that this quadrennial list was illegal as to this defendant, for that, as made and certified, he was deprived of the opportunity of contesting it on appeal; and, secondly, because the listers appraised and set down the defendant's real estate at double the value at which other real estate in town was assessed; and that all taxes assessed upon grand lists into which it enters are illegal.

The curative Act of 1882 does not, in terms, refer to the quadrennial list, and cannot fairly be said to refer to it. But if it did, the defects pointed out are so substantial that, for reasons above given, it was beyond the power of the legislature to make it valid. The legislature has no power, by

Bartlett *v.* Wilson.

antecedent or subsequent legislation, to tax one man double what it does another on the same class of property, nor to assess him anything without an opportunity to be heard. In *Exchange Bank Taxes*, 31 Fed. Rep. 101, it is said : " Under the power of taxation the property of the citizens is appropriated to the public use to the extent to which he should contribute to the public revenues, and he is liable to have a demand established against him, on the judgment of others, regarding the sum he should justly or equitably contribute. He cannot be deprived of his property, even under the law of eminent domain, without due process of law, or, in other words, without notice and an opportunity to be heard ; and this is essential to every proceeding which affects rights of property. * * * And it is stated in general terms by a text writer of high authority that a validating act cannot cure the illegality of an assessment made without notice to the persons interested."

The legislature could not, on sound constitutional principles, provide in advance that a citizen's property could be taken under the form of a tax for the public use without giving him the opportunity to be heard respecting its valuation, and for this reason could not validate such taking by a subsequent statute passed after such taking.

The case shows that the defendant neglected to return an inventory of his taxable estate in 1881 and 1882, as required by the Act of 1880, and in consequence thereof the listers doubled his grand list for purposes of taxation.

The Act of 1880 made it the duty of taxpayers to return a sworn inventory of their taxable estate, and on refusal so to do empowered the listers to ascertain the amount of such estate, and set the same in the list at double its appraised value. The defendant contends that this act is unconstitutional ; that it imposes a penalty upon delinquent taxpayers without the opportunity of a jury trial ; results in unequal taxation, and takes property without due process of law, or contrary to the law of

the land.   If the act is chargeable with any of these infirmities the defendant's contention is sound.

The defendant is bound to contribute his equal share towards the public revenues of the town.   That share is measured by the ratio which the amount of his property subject to taxation bears to all other taxable property in town.   All taxation must be uniform and equal.   Every taxpayer is interested in having every other taxpayer pay his proper share of taxes. Every taxpayer's taxable estate must be ascertained in some way ; and the law, in providing that each person shall return his own taxable estate, takes notice of the obvious fact that he knows best what taxable estate he has, and he therefore should be obligated to return it.

The statute empowering the listers to double the appraised value of such taxable estate which they may be able to find belonging to a recusant taxpayer, in no sense imposes a penalty upon such taxpayer.   It is merely a method of making his list. If the taxpayer refuses to return the proper taxable estate necessary to enable the listers to make an assessment that will work out equality in taxation, as between him and all other taxpayers, the law declares that his taxable estate shall be double the value of what the listers may be able to find.   The taxpayer has his choice between the two modes of ascertaining his taxable estate and by refusing the mode that is certain to work equality, he cannot complain of results that follow his own obstinacy.

He is not sentenced to pay a penalty, but voluntarily consents that the listers may make his list in the manner prescribed for all such cases.

There is nothing to show that on being doubled the defendant is compelled to pay more than his proper share of taxes, and in the absence of such proof we cannot presume it.

Nor does the statute take the taxpayer's property contrary to the law of the land.

" Due process of law " is not necessarily process according to the course of the common law, but process according to the

course of proceedings applicable to the subject-matter, and conformable to those general rules that affect all persons alike. Judge COOLEY says : " Due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe *for the class of cases* to which the one in question belongs." Con. Lim. 350.

Government must have the public revenues, and obviously cannot postpone their collections to await the determination of a common law trial to see if it is entitled to them. It must, from necessity, proceed in a summary way, not omitting, however, those safeguards that protect individual rights. Its *right* to levy taxes is determined the moment the individual comes under the protection of its laws ; and the only question open between it and its citizens is one of *method* in the enforcement of such right. If its *method* is one that in its intended and normal workings will result in equal and uniform taxation as between all its citizens, and the right of hearing upon alleged errors is preserved, such method is due process of law. All such rights are preserved in the statute in question ; and we discover nothing in its letter or spirit that contravenes any provisions of the State or Federal Constitutions, or is subversive of those fundamental principles of justice in which the " law of the land " has its root.

Judgment reversed, and new trial granted.