THE STATE EX REL. BRIESEN, Respondent, vs. BARDEN, Appellant.

*September 30 — October 14, 1890.*

*Elections: Constitutional law: Printing on back of ballots.*

The ballots for judicial officers and those for other officers elected on the same day being required by sec. 89, R. S., to be put into separate boxes, ballots having the word "*Judiciary*" printed on the back thereof are not void under sec. 3, art. III, Const. (which provides that "all votes shall be given by ballot"), nor under sec. 10, ch. 464, Laws of 1885 (which makes it an offense to print or circulate printed ballots having any "printing, engraving, device, or mark of any kind upon the back thereof ").

APPEAL from the Circuit Court for *Columbia* County. The facts are stated in the opinion.

*Thos. Armstrong, Jr.,* and *G. W. Hazelton,* for the appellant, argued, among other things, that a ballot is merely a written vote in contradistinction to one *viva voce,* and as used in the constitution the word has its common-law meaning — nothing more nor less. It has never been held, in the absence of a statute, that a mark or word on the outside of a ballot vitiated and destroyed it. Cush. Leg. Assem. sec. 103; Mechem, Pub. Off. sec. 191; *State ex rel. Millican v. Phillips,* 63 Tex. 390. Courts have uniformly been governed by the intention of the voter, in considering whether to count or reject irregular ballots, without regard to what might be on the outside of the ticket or how they might have been folded. *State ex rel. Spaulding v. Elwood,* 12 Wis. 551; *Att'y Gen. ex rel. Carpenter v. Ely,* 4 id. 430; *People v. Cook,* 8 N. Y. 67; *Hawes v. Miller,* 56 Iowa, 395; R. S. secs. 34, 70. A secret ballot does not mean a ballot which necessarily shields every vote cast at an election from publicity. The "vote by ballot" does nothing more than to provide a method by which the voter who desires to conceal the contents of his ballot may do so. No case

can be found where a court has held that a secret ballot is anything more than a personal privilege. *State ex rel. Hopkins v. Olin,* 23 Wis. 309; *People ex rel. Williams v. Cicott,* 16 Mich. 283; *Temple v. Mead,* 4 Vt. 535; Cooley, Const. Lim. 760. This being so, the complaint is fatally defective in not alleging that the voters who supported the defendant were prevented from voting a secret ballot by reason of the distribution and use of the tickets in question.

Sec. 10, ch. 464, Laws of 1885, was intended to secure practical uniformity in the ballots by prohibiting the printing and circulation on election day of any ballots except those described in the statute. It was not intended to place restrictions upon the voter, or to make ballots of any other description illegal and void when voted by qualified electors and received by the inspectors. Had that been the intention, the law would have so declared. The section is borrowed from older states, but with a significant alteration. As found in Indiana, Texas, Mississippi, and elsewhere, it provides that "the inspectors shall refuse all ballots of any other description." In some of the states the language is, "the inspectors shall refuse to receive or count ballots not in conformity with this section." The omission of this provision from our statute must have been for a purpose. Again, sec. 9 of the same act forbids the inspectors to expose or examine the backs of ballots actually cast, and requires them to count and canvass all such ballots and declare or announce the result. *Kellogg v. Hickman,* 12 Col. 256, is the only authority we have found under a statute like our own. Other cases are based upon statutes which forbid the inspector to receive and count the vote. *Comm. v. Woelper,* 3 Serg. & R. 29; *Druliner v. State,* 29 Ind. 308; *Napier v. Mayhew,* 35 id. 276; Mechem, Pub. Off. sec. 193.

There is no analogy between contracts which are made in violation of law, and ballots which are forbidden to be printed or circulated but not forbidden to be voted.

*George W. Bird*, for the respondent, contended, *inter alia*, that the ballots cast for the defendant were void because in violation of sec. 3, art. III, Const., which provides that "all votes shall be given by ballot," etc. A ballot implies absolute and inviolable secrecy. Bouvier's Law Dict. 11th ed. and 15th ed.; McCrary, Elections, sec. 513; Paine, Elections, sec. 535; Cooley, Torts, 298; Cooley, Const. Lim. (5th ed.), 760, 761; 2 Am. Cyc. 245, "Ballot;" Mechem, Pub. Off. secs. 192, 194; 1 May, Const. Hist. of Eng. 353; *Temple v. Mead*, 4 Vt. 535; *People ex rel. Smith v. Pease*, 27 N. Y. 45; *Williams v. Stein*, 38 Ind. 89; *State ex rel. Williams v. Cicott*, 16 Mich. 283; *Brisbin v. Cleary*, 26 Minn. 107; *Barnum v. Gilman*, 27 id. 466. If the ticket be not such as required by the constitution, or even a statute, it is void and cannot be counted. *Comm. v. Read*, Bright. Elec. Cas. 126; *S. C.* 2 Ashm. (Pa.), 261; *Foster v. Scarff*, 15 Ohio St. 532; *Att'y Gen. v. Detroit Comm. Council*, 58 Mich. 213, 217; *Jones v. Glidewell*, 7 Law Rep. Ann. 831; Cooley, Const. Lim. 760; Mechem, Pub. Off. sec. 192.

The ballots cast for the defendant were void because in violation of sec. 10, ch. 464, Laws of 1885 (sec. 44*i*, S. & B. Ann. Stats.). Whatever is prohibited by statute is, of course, illegal and void. *Ætna Ins. Co. v. Harvey*, 11 Wis. 394; *Lemon v. Grosskopf*, 22 id. 447; *Melchoir v. McCarthy*, 31 id. 252; *Clarke v. Lincoln Lumber Co.* 59 id. 655; *Fulton v. Day*, 63 id. 112; *Hallett v. Novion*, 14 Johns. 273. The object of the statute being to secure the secrecy of the ballot, any departure from its provisions in any way destroying, invading, or impairing that secrecy invalidated the ballot itself and required its rejection. McCrary, Elections, secs. 500–505; Cooley, Const. Lim. 760; Cooley, Torts, 298; *Comm. v. Woelper*, 3 Serg. & R. 29; *State ex rel. Mahoney v. McKinnon*, 8 Oreg. 493; *Ledbetter v. Hall*, 62 Mo. 422; *Oglesby v. Sigman*, 58 Miss. 502; *Perkins v. Carraway*, 59 id. 222; *Keller v. Toulme*, 7 S. Rep. (Miss.), 508; *Steele v.*

*Calhoun,* 61 Miss. 556; *Kirk v. Rhoads,* 46 Cal. 398; *Reynolds v. Snow,* 67 id. 497; *State v. Collins,* 12 Atl. Rep. (R. I.), 121; Paine, Elections, secs. 534–5. In cases where the particular objections urged were held not to invalidate the tickets, those objections were either as to the heading or other printing on the *inside* of the tickets, or their shape where there was no requirement as to the shape. *Druliner v. State,* 29 Ind. 308; *Stanley v. Manly,* 35 id. 275; *Millholland v. Bryant,* 39 id. 363; *State ex rel. Julian v. Adams,* 65 id. 393; *State ex rel. Millican v. Phillips,* 63 Tex. 390; *Owens v. State ex rel. Jennett,* 64 id. 500; *Williams v. State ex rel. Vasmer,* 69 id. 368; *Wyman v. Lemon,* 51 Cal. 273; *Coffey v. Edmonds,* 58 id. 521.

Orton, J. The demurrer *ore tenus,* or the defendant's objection to any evidence under the complaint, on the ground that it does not state facts sufficient to entitle the relator to recover, by stipulation stood as a general demurrer on the same ground, and as such was overruled, and the defendant has appealed to this court from said order.

This is a proceeding in *quo warranto* to inquire by what right the defendant holds and exercises the office of county judge of the county of Columbia in this state. The complaint states, in substance, that at an election held in the several election districts in said county on the first Tuesday, it being the 2d day, of April, 1889, for the office of county judge in said county, for the term of four years commencing on the first Monday of January, 1890, the said relator, *E. V. Briesen,* and the said defendant, *Levi W. Barden,* both residents and qualified electors of said county, and eligible to hold said office, were the opposing and only candidates for said office, and at said election the said *Briesen* received 1,413 votes, and the said *Barden* received 2,565 votes, but all of the votes so cast for said *Barden* were ballots on the back of which was printed the word " Judiciary "

in such manner that they could not be folded without disclosing said word. The said *Barden* knowingly and purposely printed or caused to be printed the said ballots for use at said election, and distributed or caused to be distributed in and through the several election districts of said county, and at the polls thereof at said election, the said votes or ballots, and knowingly and purposely used and voted or caused the same to be used and voted at said election, to the number of 2,565 aforesaid, which constituted all the votes the said *Barden* received at said election for said office, or cast at said election, and all with the said word so printed on the backs thereof. The face of all the ballots so cast and received by the said *Barden* contained the following: "For associate justice of the supreme court, John B. Cassoday. For county judge, *Levi W. Barden*." In about the middle of the back thereof was printed, in common type, "Judiciary." The votes at said election for said office were duly canvassed, and the said *Barden* received the certificate of election to said office, and entered upon the duties thereof on the first Monday, it being the 6th day, of January, 1890, and has remained in said office. The names of the persons who voted said ballots are not known. The relator was duly elected to said office, and has since duly qualified to enter on the duties thereof.

The only question on the demurrer was whether the said ballots so cast for the defendant, *Barden,* with such an indorsement thereon, were lawful and valid ballots. The learned counsel of the relator made a very able argument, and cited many authorities to show that said ballots were void (1) by the constitution, and (2) by the statute. The learned counsel of the defendant, with equal ability, contended that they were valid, and properly voted, counted, and canvassed for the defendant.

The learned counsel of the relator correctly contends that the question is, Which of the two received a majority of

the *legal* votes for said office, cast at such election? *State ex rel. Holden v. Tierney*, 23 Wis. 430. The main contention of the learned counsel is that the constitution, art. III, sec. 3, requires that "all votes shall be given by ballot," and that all of the votes so attempted to be cast for the defendant were void because not given by *ballot;* that the printed word "Judiciary" on the back of the same destroyed their character as ballots, and correctly contends that the inherent and distinctive character of a ballot is its *secrecy*, as against a vote *viva voce*, or an open or declared vote. That secrecy so essential to a vote by ballot may have been so required by the constitution of this and other states for reasons personal to the voter as a privilege, or on grounds of public policy, or both, but the true reason is not very material. The absolute secrecy of the vote is required, and to secure that it must be by-ballot. A so-called ballot that does not secure the secrecy of the vote is not a ballot in the sense of the constitution and laws of this state.

What does such secrecy mean? In what respect? And what does it consist of? A vote is the wish or will of an elector, whether expressed by ballot or *viva voce*. That wish or will expressed by a ballot must not be known to any one except the voter himself, by such ballot. The paper called a ballot must not disclose for what or for whom it is voted, except by the name of the person voted for and the office on the face thereof. If it has any mark or device on the outside, and visible or apparent to common or casual observation, that discloses for what or for whom it is voted, it is not a ballot. This I understand to be the strict meaning of a constitutional ballot; but this construction of the constitutional requirement must be reasonable. It would almost seem that whatever mark there might be on the ballot by which it might possibly be known how the elector voted, to invalidate it, ought to have been placed there by

*design*, and not by mere *accident*. The rule that anything on the ballot by which it might be possible to ascertain the will or wish of the voter invalidates it, is too strict to be practical. The quality of the paper, the dimensions or form of the ballot, the water-marks in the paper, the manner of folding it, or any other like differences that the ballots of either candidate may have by which it might be possible to determine for whom or for what they are cast, ought not to destroy their validity. It would be hardly possible without concert that the tickets on both sides should be exactly alike. Such mere accidental differences would be likely to occur more or less in all cases, and voting by ballot would be impracticable, if not impossible, without them. Anything written or printed on the outside of a ballot, to make the voting of it possible or practicable, and not placed there for the purpose of making it known for whom the elector votes, and not necessarily or commonly used for such purpose, would seem to come within the same rule of reasonable construction.

Judicial elections are required to be held on the day of the town election when the town officers, or, if in the cities, the city officers, are elected, and the votes for both are received at the same time. The statute (sec. 89, R. S.) requires that "all votes given for any [judicial] officer shall be put in a ballot-box separate from that used for any other election on the same day." How can this be made practicable? The election officers are ready to receive the ballots for town officers and for any judicial officers to be then elected. If a ballot is offered, how can they tell what ballot it is, whether *town* or *judicial*. The same elector votes for both at the same time. Must they ask the voter whether it is a judicial or a town ticket? If he answers, "It is a judiciary ticket," as he must in order to have it put into such separate box, has he disclosed any important secret that may indicate how or for whom he votes? Evidently not. Many electors would not

know exactly what to call such a ticket if asked by the inspector. It would take time to explain it after such inquiry. Is that practicable? All the possible real harm is done in disclosing it in this way. Would it not be the better way, and answer the same purpose, if the word "Judiciary" is placed on that class of tickets, by which the inspector may know at a glance in what ballot-box to deposit it? Is not this the only reasonable and practicable way of informing the officer in what box to deposit it? Would that word, printed boldly and legibly on a ballot at such an election, disclose any secret that is essential to the validity of the ballot? It does not indicate how or for whom the elector votes, and such is not the purpose. It would seem that all ballots for judicial officers ought to be distinguished in that way from town election ballots. It would be equally convenient to have the word "Town" printed on the town ballots, as they also must be deposited in a separate box. This practice would be reasonable and proper to enable the election officers to comply with the statute requiring the ballots to be put into separate boxes. We do not know from this case that such is the practice, except in this instance, but it certainly ought to be, if it is not unconstitutional or unlawful. We do not know that such is not the practice in such cases, and we do not know that the word "Judiciary" was placed on these ballots according to the general custom and practice. It would seem, then, that it would be reasonable and proper that such ballots should be so distinguished. It follows that it would not vitiate or invalidate the ballot as a ballot to so distinguish the judiciary vote.

But it may be answered that, in this instance, only the defendant's ballots were so distinguished, and therefore any one could know that the elector, if he cast such a ballot with that word on it, voted for the defendant and not the relator, and thus the mischief is accomplished. That shows that it is not the ballot itself that is at fault, but the use

that is made of it in this instance and under these circumstances. It so happened in this instance that the ballots of the relator did not have this word on them. Any one could therefore know just as well how the elector voted by such ballots, and know that he voted for the relator. The ballots of the relator disclosed the secret guarded by the constitution, just as much as those of the defendant. If the votes on one side should be declared void for such reason, they should be declared void on both sides. It is not in the ballot itself *per se* or *ipso facto*, but in the use of it under the circumstances, that the evil existed. It is the substance of things to be considered on a constitutional question, as on any other. The same evil or mischief is wrought in the voter telling the inspector *orally* in what box to put his ticket, as if the word " Judiciary " was on it.

From practical necessity, then, we say that it was proper and constitutional to print on the defendant's ballots the word " Judiciary," and for the electors to vote them. It was for the high and wise purpose of not having judicial officers and candidates for such offices exposed to the feeling and excitements of political, popular, and general elections that the constitution has provided that such elections should not be held at any general election. Art. VII, sec. 9. To save the great expense of special elections, the legislature provided that they should be held on the same day of *town* elections. To carry out both the constitution and the statute, it is necessary that there should be separate ballot-boxes, and that the votes for judicial officers should be put in a ballot-box separate from that used for town officers on the same day. It is therefore necessary that there should be something on the ballot to indicate to the election officers in which ballot-box to deposit the vote, if in itself it does not indicate how the elector votes.

It is very clear that the statute (sec. 10, ch. 464, Laws of 1885) making it an offense for any person to print any bal-

lot for use at any election, or distribute or circulate at any such election, any printed ballot having any printing, engraving, device, or mark of any kind, upon the back thereof, ought to have the same construction as the constitutional provision, in respect to the word "Judiciary" printed on judicial ballots. The law making this necessary is not affected or repealed by this statute, and this necessary practice under it is not in conflict with this statute. It is not certain that this statute ought not to be so construed as to embrace only such printing, engraving, device, or mark that in itself indicates, or may be naturally used or intended to indicate, how an elector votes at an election; but this statute does not prohibit the voting such a ballot, or declare the vote itself illegal. Besides this, such votes, if any, must be counted, for the inspector is forbidden to examine the backs of the ballots; and, when counted and canvassed, they are by law to be destroyed. They cannot therefore be void votes. The above views are only applicable to judicial elections, with such a direction as to the ballot-box into which the vote should be deposited. Where there is so much necessity and propriety for such a designation, and it may be customary, are we to presume that the electors knew or observed that all the ballots cast for judges at that election were not distinguished or marked in the same way, or that the presence or absence of such a designation indicated who were voted for? To avoid any such improper use of such a designation, all such ballots may be made uniform in that respect.

This case may well stand as an exception to the rule that no mark of any kind must be placed on the backs of ballots to be voted at any election, from the peculiarity and necessity of the case. In all other cases, the law may well stand as contended by the learned counsel of the relator, and approved by the authorities he has cited. None of such authorities militate against the view we have above

taken; for in no case has there been the necessity to so distinguish the ballots to be deposited in separate boxes, under a provision of the constitution requiring a judicial election to be held on a different day from that of the general election. These two constitutional provisions may well stand together.

It follows from the above views that the complaint does not state a cause of action, because it appears therefrom that the defendant received a majority of the legal votes cast at said election, and is entitled to the office as against the relator.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded with direction to sustain said demurrer, and for further proceedings according to law.