PROVOSTY, J., dissenting, thinks the charge should have been given.

---

(67 South. 352)

No. 20846.

BLOOMFIELD v. THOMPSON, Com'r of Public Utilities, et al.

In re THOMPSON, Com'r of Public Utilities, et al.

(Jan. 25, 1915.)

*(Syllabus by the Court.)*

1. MUNICIPAL CORPORATIONS ☞131 — MEMBERS OF PUBLIC BELT RAILROAD COMMISSION—POWER TO APPOINT—VALIDITY OF ORDINANCE.

Ordinance No. 74 of the commission council of the city of New Orleans, providing that the commissioner of public utilities shall be ex officio a member of the public belt railroad commission, and shall be acting president of said commission, and shall have active charge, management, and control of the detail operations, etc., of said railroad, violates the provisions of the constitutional amendment of 1908, which vest in the mayor of the city of New Orleans the power to appoint the members of said commission, with the consent of the council.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 305, 378; Dec. Dig. ☞131.]

2. OFFICERS ☞9—FILLING OF OFFICE—CONSTITUTIONAL PROVISION.

Where the Constitution has provided the method of filling offices, the Legislature may not provide for filling them in any other manner.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 11; Dec. Dig. ☞9.]

Action by William B. Bloomfield against W. B. Thompson, Commissioner of Public Utilities, and another. A judgment for defendant was reversed by the Court of Appeal, and defendants apply for certiorari or writ of review. Affirmed.

I. D. Moore, City Atty., John F. C. Waldo and John J. Reilley, Asst. City Attys., all of New Orleans, for applicants. Charles Rosen, of New Orleans (James D. Hill, of New Orleans, of counsel), for Wm. B. Bloomfield and New Orleans Board of Trade, Limited, plaintiff and intervener.

LAND, J. This case was before us on a writ of certiorari, and judgment was rendered in favor of the plaintiff on December 15, 1913. A rehearing was granted on the suggestion of the defendants that the Constitution of 1913 had vested appellate jurisdiction over this cause in the Court of Appeal for the parish of Orleans, and on rehearing the proceedings were dismissed without prejudice to the right of the litigants on either side. See Bloomfield v. Thompson, 134 La. 923–950, 64 South. 853.

[1] Plaintiff thereupon appealed to the Court of Appeal for the parish of Orleans, which, for reasons assigned, rendered judgment as follows, to wit:

"It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that a peremptory injunction issue herein restraining and prohibiting the defendant, W. B. Thompson, commissioner of public utilities, and the city of New Orleans, from executing or enforcing the provisions of Ordinance No. 74, Commission Council Series, which ordinance is hereby declared null and void. It is further ordered that the city of New Orleans pay all costs."

The defendants applied to this court for a writ of certiorari or review, which was granted.

In 1904 the council of the city of New Orleans enacted Ordinance No. 2683, N. S., amending and re-enacting Ordinance No. 147, N. S., of August 7, 1900, creating a board of commissioners to be known and styled as the "Public Belt Railroad Commission" for the city of New Orleans, to be composed of the mayor of the city of New Orleans, and 16 resident taxpayers and electors of said city, to be appointed by the said mayor, by and with the approval of the council of the city of New Orleans. The ordinance provided that 11 of the members of said commission should consist of members of certain business exchanges, boards, and unions, and should be appointed on their recommendation, and that 5 members should be appointed from the citizens of New Orleans at large, 3 from above, and 2 from below, Canal street. The ordinance further provided that the commission should organize by selecting a president pro tem., a secretary-treasurer, an industrial commissioner, an auditor, and a general manager, and that the president pro tem. should be a member of the commission, and should have active charge, control, management, and supervision of the business of said commission, subject to the direction of the commission; and that the manager should be at all times subject to the supervision and control of the president pro tem.

This ordinance thus vested the executive powers of the commission in its president pro tem., subject, however, to the direction of the commission.

The commission thus organized proceeded to construct the contemplated belt railway, and had made considerable progress in the work, when, in 1908, it became evident that the construction and equipment of the railway would require a great deal more money than the city was able to provide for that purpose. The commission decided to raise the necessary funds by means of a bond issue; and the Legislature, by Act No. 179 of 1908, p. 256, authorized the city of New Orleans to issue $2,000,000 of 5 per cent. bonds, for the purpose of constructing, maintaining, and operating the said public belt railway system. The act was a proposed constitutional amendment, which was ratified by a vote of the people in November, 1908, and the amendment was incorporated in the Constitution of 1913 as article 323, under the caption of "Public Belt Railroad Bonds." The last sentence of article 323 reads as follows:

"All the provisions hereof shall constitute a contract between the holder of the bonds issued under Act 179 of 1908 and of this title, the state of Louisiana, the city of New Orleans and the board of commissioners of the port of New Orleans."

Section 7 of the amendment of 1908, as incorporated in article 323 of the Constitution of 1913, reads, in part, as follows:

"The city of New Orleans shall construct, equip, maintain and operate said public belt railroad system of the city of New Orleans through and by means of such board or commission as may have been or may be organized by the city of New Orleans, the members of which shall be appointed by the mayor of the city of New Orleans, with the consent of the council, the powers, duties and functions of which shall be prescribed by the city of New Orleans. * * * The control, administration, management, and supervision of the construction, maintenance, operation and development of the public belt railroad of the city of New Orleans shall be exclusively vested and remain in such board or commission, which shall always be separate and distinct from that of any railroad entering the city of New Orleans."

When the amendment of 1908 was adopted the belt railroad was under the control and management of a commission organized in 1904 under Ordinance No. 2683, N. C. S. This commission continued in control and management of said belt railroad until Jan-

uary 23, 1913, when the council of the city of New Orleans adopted Ordinance No. 74, C. C. S. Relative to this ordinance, this court, in Bloomfield v. Thompson, 134 La. 930, 931, 64 South. 856, said:

"It amends Ordinance No. 2683, New Council Series of 1904, by adding the commissioner of public utilities to the membership of the public belt railroad commission, and by abolishing the office of president pro tem. and creating, in its place, that of acting president, and by providing that the commissioner of public utilities shall be acting president of the commission; and it then provides as follows:
" 'The commissioner of public utilities of the city of New Orleans shall, as aforesaid, be the acting president of the commission. In the absence of the president (that is, the mayor), he shall preside at all meetings. He shall have active charge, management and control of the detail operations of the belt railroad system, and the heads of the several departments of accounting, operation and engineering shall report to him and take instructions from him. He shall report to the commission and keep the same fully advised of all matters falling within his management, and shall be the agent through whom the general directory powers of the commission shall be executed.' "

By the same ordinance the general manager charged with the physical construction, maintenance, operation,. and development of the public belt railway was at all times made subject to the supervision and control of the acting president of the commission.

Plaintiff sued to annul said Ordinance No. 74, on the ground that after the issue of bonds under the aforesaid amendment of 1908 the city council was without authority to divest the exclusive control of the public belt commission over the public belt railway, or to reorganize the commission. The first contention was sustained in Bloomfield v. Thompson, supra, and the second was not passed upon.

As already stated a rehearing was granted in said case, and the proceedings were finally dismissed for want of jurisdiction in this court; and the plaintiff thereupon appealed to the Court of Appeal, which rendered judgment in his favor.

The decree of the Court of Appeal was based on the proposition that the appointment of the defendant by the council as an ex officio member of the commission was null and void, because ·by the constitutional amendment of 1908 the power to appoint the members of the commission was vested in the mayor of the city of New Orleans. All the judges of the Court of Appeal concurred in the opinion and decree. Judge Claiborne assigned additional reasons to the effect that Ordinance No. 74 violated the contract with the bondholders by attempting to divest the commission of its exclusive control, supervision, and management of the affairs of the public belt railroad.

The contention of the defendants that the appointment of the commissioner of public utilities by the city council with the approval of the mayor is equivalent to his appointment by the mayor with the consent of the council reverses the respective functions of the mayor and the council as prescribed in section 7 of the constitutional amendment of 1908, now article 323 of the Constitution of 1913. The Court of Appeal said:

"But the mere statement of the case makes it manifest that the ordinance violates the provisions of the statute, since the commissioner of public utilities becomes a member of the board by virtue of the ordinance, instead of by appointment of the mayor, as required by the statute."

The statute thus referred to is Act No. 179 of 1908, which became a constitutional amendment in said year. We may add that this amendment conferred on the city council no other power, quoad the appointment of members of said commission, than that of confirmation or rejection.

[2] It is well settled that:

"Where the Constitution has provided the method of filling offices, the Legislature may not provide for filling them in any other manner than that directed by the Constitution." 29 Cyc. 1369.

It has also been held that:

"An ordinance which assumes to transfer the power of appointment to persons other than those upon whom it has been committed by charter is invalid." 28 Cyc. 406.

The authorities cited by counsel for the defendants have no application to the case at bar, where the method of appointing members of the commission is specially prescribed by the organic law.

The power to reorganize the commission does not vest any jurisdiction in the council to appoint the members thereof, or to administer the belt railroad otherwise than through a commission appointed by the mayor with the consent of the council.

It goes without saying that the powers conferred on the council by the present city charter (Act No. 159 of 1912, p. 253) must be subordinated to the provisions of the constitutional amendment of 1908 relative to the public belt railroad.

The further contention of the defendants that the issue decided by the Court of Appeal is not covered by the pleadings is without merit, because the plaintiff and intervener alleged:

"That said Ordinance No. 74 is illegal, unconstitutional, null, and void, for the same reasons hereinabove alleged against Ordinance No. 1; and said commission council was and is without authority to make said commissioner of public utilities a member of said public belt railroad commission, and vest in him the powers conferred by said ordinance."

The judgment of the Court of Appeal is based on the proposition that the ordinance violates the provisions of the constitutional amendment of 1908, because the commissioner of public utilities became a member of the board by virtue of the ordinance, instead of by appointment of the mayor. No other issue was decided by the Court of Appeal, and, as we affirm the judgment, it is unnecessary for this court to consider other points discussed by counsel.

Judgment affirmed.