SMITH & SON, INC. *v.* TOWN OF HARTFORD ET AL.

October Term, 1937.

Opinion filed January 13, 1938.

*Fred B. Thomas* and *Wilson, Carver, Davis & Keyser* for the plaintiff.

*William S. Pingree* and *Raymond Trainor* for the defendant.

POWERS, C. J. The plaintiff, a corporation, seeks to enjoin the defendants from collecting certain taxes assessed by the town of Hartford on the former's grand list in that town in the years 1933 and 1934.

It is insisted by the plaintiff that such taxes were illegally assessed because the quadrennial appraisal of 1930, which formed the basis of the real estate taxes here in question, was illegal and because the grand lists of 1933 and 1934 were illegal —all for the reasons and defects hereinafter discussed.

The chancellor, before whom the case was tried below, found that the defendant MacAulay, who was elected first constable of the defendant town in 1934 and again in 1935, and who had begun proceedings to collect the taxes in question by a sale of property, had thereafter removed from that town, leaving the office vacant. So the temporary injunction against him was made permanent. As to the town of Hartford, the chancellor ruled that the taxes were valid and collectible, and modified the preliminary injunction so as to allow the town to proceed anew to collect them by a legal officer—which modification was not to become operative until after the determination of this suit in this court. The plaintiff excepted and appealed.

Those who acted as listers in making the quadrennial appraisal of 1930 were Seth B. Wright, Leslie I. Walker and Romaine A. Spafford. Walker was chosen at the annual meeting of the town in 1929, in this way: He was nominated as a candidate for the office of lister for a three-year term; no other name being presented, it was voted, *viva voce*, that George G. Nichols be instructed to cast one ballot for Walker for the office named. Such a ballot was cast, and Walker was declared elected lister for the term specified. In exactly the same way, Spafford was chosen as a lister for a three-year term at the annual town meeting in 1930.

Did the method pursued meet the requirements of the statute, and result in a valid election of these men as listers of the defendant town?

Among other things, it is provided by P. L. 3432, subd. VII, that at annual town meetings, there shall be chosen "one lister for the term of three years who shall be elected by ballot." It is also provided in that section that some, but not all, of the other town officers shall be elected by ballot.

So a proper construction of this statute will furnish the answer to the question propounded above.

■ ■ The intention of the Legislature constitutes the law. *Coral Gables, Inc.* v. *Christopher,* 108 Vt. 414, 418, 189 Atl. 147, 109 A. L. R. 474. To effectuate that intention, the language of the Legislature may be enlarged or restrained, when necessary. *Simonds* v. *Powers' Est.,* 28 Vt. 354, 355. In construing statutes, courts must consider, not only their letter, but their reason and spirit. *Town of Ryegate* v. *Wardsboro,* 30 Vt. 746, 749. So it is that a thing which is within the intention of the Legislature, though not within its letter, is as much within the statute as if it was within the letter. *Trustees of Cal. Co. Gram. School* v. *Kent,* 86 Vt. 151, 158, 84 Atl. 26. And, conversely, a thing which is not within the spirit of a statute, is not within the statute, though it is within the letter of it. *Osgood* v. *Cent. Vt. Ry. Co.,* 77 Vt. 334, 337, 60 Atl. 137, 70 A. L. R. 930; *In re Fulham's Est.,* 96 Vt. 308, 317, 119 Atl. 433; *Town of Hartland* v. *Damon's Est.,* 103 Vt. 519, 528, 156 Atl. 518; *Brammall* v. *Larose,* 105 Vt. 345, 349, 165 Atl. 916.

We do not stop to consider whether the action of the defendant town comes within the letter of the statute, for we are well assured that it does not come within its spirit.

■ ■ In statutory construction, the words used by the Legislature are to be taken in their ordinary sense, unless that would lead to an unintended result. *Safford* v. *Houghton's Est.,* 48 Vt. 236, 238. As applied to the case in hand, this rule requires us to construe the statute before us as meaning that the election of the officers therein specified shall be ''by ballot as that term is usually and generally understood in this country.'' That is just what this Court said about this matter in *Temple* v. *Mead,* 4 Vt. 535, 540. That case involved a constitutional question, but the construction of a statutory provision should be in harmony with it.

■ An examination of the authorities discloses that from a very early time ''voting by ballot'' has been a term used to distinguish secret voting from open voting. The privilege of secrecy is of the essence of voting by ballot. This is sustained very generally. In *State* v. *Anderson,* 26 Fla. 240, 8 So. 1, 5, wherein a constitutional provision was involved, the court said: ''The material guaranty of this constitutional mandate of vote

by ballot is inviolable secrecy as to the person for whom an elector shall vote. The distinguishing theory of the ballot system is that every voter shall be permitted to vote for whom he pleases, and that no one else shall be in a position to know for whom he has voted, or shall know unless the voter shall, of his own free will, inform him.''

To the same effect are *Brisbin* v. *Cleary,* 26 Minn. 107, 108, 1 N. W. 825; *City of Detroit* v. *Board of Inspectors,* 139 Mich. 549, 102 N. W. 1029, 1031, 69 L. R. A. 184, 111 A. S. R. 430, 5 Ann. Cas. 861; *Williams* v. *Stein,* 38 Ind. 89, 10 A. R. 97, 101; Cooley, Const. Lim., 8th ed., 1374; *State* v. *Barden,* 77 Wis. 601, 46 N. W. 899, 10 L. R. A. 155, 157; *Lynch* v. *Malley,* 215 Ill. 574, 74 N. E. 723, 724, 2 Ann. Cas. 837; *State* v. *Shaw,* 9 S. C. 94, 132; *People* v. *Pease,* 27 N. Y. 45, 81, 84 A. D. 242; 1 Bouv. Law Dict., Rawle's Third Rev., 983.

None of these really adds anything to the law laid down in *Temple* v. *Mead, supra,* which has, for many years, been a leading case on this subject, and is very widely cited. The Court in that case said: ''The principal object of this last mode [voting by ballot], is to enable the elector to express his opinion secretly, without being subject to be overawed, or to any ill will or persecution on account of his vote for either of the candidates who may be before the public.''

██ It is clear that the provision that the lister shall be chosen by ballot necessarily implies an expression of the voter's choice by the deposit of a written or printed ticket bearing the name of his candidate in a receptacle provided therefor, in such a way as to secure to him the privilege of complete secrecy regarding the person voted for. The method adopted by the defendant town did not secure that privilege. It defeated the basic purpose of the Legislature, and did not result in a valid election.

If our conclusion as to the legislative purpose embodied in P. L. 3432 needs any confirmation, it is to be found in P. L. 3433, wherein it is provided that ''when election is by ballot, a majority of all the votes cast for any office shall be required for an election thereto, unless otherwise provided by law''; and in P. L. 3448, wherein it is provided that ''when a ballot is had, the polls shall be kept open a reasonable time, and reasonable

notice of their close shall be given. The votes shall be counted by members of the board of civil authority present.''

These provisions show that the Legislature had in mind the old-fashioned ballot hereinbefore described.

It is held that when a state constitution makes certain officers elective, this provision cannot be evaded by any legislative subterfuge. *People ex rel.* v. *Albertson,* 55 N. Y. 50, 57; *Bloomfield* v. *Thompson,* 136 La. 519, 67 So. 352, 353. No more can a town, by vote or otherwise, nullify the plain mandate of a statute containing a like provision. *Bareham* v. *Rochester,* 220 N. Y. S. 66, 70, 128 Misc. 642. Municipal officers must be chosen in accordance with statutory requirements or they cannot lawfully act as such. The listers above specified were not so chosen and had no title to the office of lister. *Thayer* v. *Stearns,* 1 Pick. (Mass.) 109, 111; *Com.* v. *Baxter,* 35 Pa. St. 263, 265.

The result is that the quadrennial appraisal of 1930 was made up by a board of three listers, two of whom had no authority to act, and that instrument has no validity.

The case shows that the figures entered in the quadrennial appraisal as the taxing value of the plaintiff's real estate were carried into the grand list of the plaintiff for the years 1933 and 1934, and became a part of the plaintiff's taxable property for those years. It has long been the law of this State that this renders all taxes assessed on those lists invalid and uncollectible. *Bartlett* v. *Wilson,* 59 Vt. 23, 32, 8 Atl. 321; *Meachem* v. *Newport,* 70 Vt. 264, 267, 40 Atl. 729.

Nor does it avail the defendant anything to show that the listers who made this quadrennial appraisal were *de facto* officers. That fact would be important in some cases, but has no application here. The listers did not proceed in their own right, at all, but only as officials. Legally elected listers are public officers exercising such governmental functions as the State has entrusted to them. Though they are, in a real sense, State officers, in another sense they serve the town, since their product affords the foundation for securing the money with which the town is able to discharge its governmental duties. One exercising such an office cannot justify his acts on the ground that he was a *de facto* officer, in any suit to which he is a party. *Cummings* v. *Clark,* 15 Vt. 653, 657; *Willard* v. *Pike,* 59 Vt. 202, 214, 9 Atl. 907. The enforcement of a tax is a pro-

ceeding *in invitum.* The taxing authority stands before the law no better than the officer. To justify the collection of these taxes, the defendant can stand only on a showing of, at least, a substantial compliance with all the statutory requirements. *Rowell* v. *School District,* 59 Vt. 658, 10 Atl. 754. It is indispensable to the validity of any tax that it shall be laid upon a grand list made up in substantial compliance with the law, by officers selected according to law. In all cases between a taxpayer and the taxing authority or an officer appointed by it, wherein the collectibility of the tax is in issue, the suit must fail unless the officer whose acts are questioned was clothed with all the power and authority appertaining to his office. The acts of *de facto* officers are legal in controversies between third persons, but not against the taxpayer. Moreover, as against him, whoever would justify the collection of a tax must establish the legality of every step in the taxing process, from beginning to end. *Bosworth* v. *Bancroft,* 74 Vt. 451, 453, 52 Atl. 1050.

*Decree reversed, and cause remanded with direction that the defendant be permanently enjoined from collecting the taxes in question.*