FORT, COMMISSIONER OF FINANCE AND TAXATION, *et al. v.*
DIXIE OIL CO.

(*Nashville*, December Term, 1935.)

Opinion filed May 2, 1936.

Roy H. Beeler, Attorney-General, Norman Farrell, Jack Norman and L. Buchanan Loser, all of Nashville, for petitioner.

Richard M. Atkinson, and C. Beverly Briley, of Nashville, for appellees.

Mr. Chief Justice Green delivered the opinion of the Court.

A petition for *certiorari* and *supersedeas* to stay the levy of a distress warrant, issued by the commissioner of finance and taxation, on the properties of the Dixie Oil Company, and to have said warrant adjudged null and void, was filed by that company in the chancery court at Nashville. The commissioner and the sheriff entered a motion to dismiss for want of equity on the face of the petition, which motion they treat as one to dismiss for want of jurisdiction. The chancellor overruled the motion, having previously granted the writs of *certiorari* and *supersedeas* upon the execution by the petitioner of a *supersedeas* bond in the sum of $5,000, but required the commissioner and the sheriff to answer. They have filed a petition for *certiorari* and *supersedeas* in this court seeking to have the writs granted by the chancellor quashed and the petition of the Dixie Oil Company dismissed.

The contention of the commissioner and the sheriff is that the chancellor was without jurisdiction to issue the writs allowed by him. If this contention be good, the commissioner and the sheriff are entitled here to the writs they seek.

A special privilege tax upon the handling of gasoline is levied by section 1126 *et seq.* of the Code (as amended by Pub. Acts 1933, chap. 130, sec. 1 *et seq.*). The petition

of the Dixie Oil Company avers that it is a corporation engaged in the buying and selling of gasoline, kerosene, and by-products of petroleum. That the commissioner of finance and taxation, prior to February 14, 1936, made an assessment against the petitioner in the sum of $2,-471.70 as taxes due the state on gasoline sales; that while petitioner was disputing and denying this assessment the commissioner "arbitrarily and without just cause or right issued a distress warrant" against the properties of petitioner and that the sheriff of Davidson county levied said distress warrant and seized and locked up petitioner's place of business.

Petitioner further avers that it does not owe "said assessment made against it" and that the payment of same under protest would work a tremendous hardship on petitioner. There is an allegation in the petition that "the representatives of defendant, Dancey Fort, Commissioner, are openly asserting that their real purpose is to destroy petitioner's business." There is a further allegation that private competitors are aligned with the commissioner and are working with representatives of the commissioner to destroy petitioner's business and the business of other "independent operators in gasoline." It is set out that petitioner has tendered the commissioner a bond in the sum of $10,000 for the payment of all delinquent taxes, which bond the commissioner refused to accept and release the properties of the petitioner. There is also a statement in the petition that "the legal representative of the defendants" has stated that their main purpose is to drive petitioner out of business.

It will be observed from the foregoing that the Dixie Oil Company concedes that it is in the business of buy-

ing and selling gasoline and accordingly liable for the payment of gasoline tax. The validity of the gasoline tax is not challenged. All that the petition can mean is that the commissioner has assessed an excessive tax against the Dixie Oil Company and that this has been done unjustly and arbitrarily. The tax is measured by the number of gallons of gasoline sold. The real controversy, as the petition discloses, is as to the amount of the tax for which the Dixie Oil Company has incurred liability.

There is no charge in the petition that the commissioner was guilty of fraud in the assessment of this tax. It is said that he acted arbitrarily, but no facts are set out to support this conclusion. Neither the commissioner nor the state can be prejudiced in the collection of revenues due the state by indiscreet remarks or threats of subordinate employees or representatives.

Sections 1130-1136 of the Code (as amended by Pub. Acts 1933, chap. 130, sec. 4 *et seq.*) provide for the making of certain reports by distributors of gasoline and dealers in gasoline with respect to the number of gallons sold, and section 1137 of the Code is as follows:

"Upon the failure of any person engaged as distributor or dealer to make and deliver to the commissioner of finance and taxation the statement above provided for, or to pay the taxes due, it shall be the duty of the commissioner to revoke his permit, and immediately to proceed to inform himself as best he may regarding the matters and things to be set forth in such statement, and, from such information as he may be able to obtain, to make a statement, showing such matters and things, and determine and fix the amount of the privilege tax due the state from such delinquent person, and deliver

such statement to the comptroller, of the taxes due, based upon such delinquent's report, or upon the finding, who shall proceed to collect said amount, including a penalty of one per cent per day, for not exceeding ten days, and interest, by the issuance of a distress warrant against the delinquent and the surety on his bond, and, if necessary, by suit on the bond. Upon the request of the comptroller, it shall be the duty of the attorney-general to institute and prosecute to conclusion all proper and necessary suits for the collection of the taxes.''

By chapter 130 of the Public Acts of 1933 (section 11) authority to issue a distress warrant was conferred upon the commissioner of finance and taxation instead of upon the comptroller as in section 1137 above.

From the foregoing, it appears that the commissioner of finance and taxation is empowered to determine the amount of gasoline tax due from any delinquent dealer or distributor and is charged with the collection of the gasoline tax and is authorized to enforce collection of this tax by distraint.

Section 1790 of the Code is as follows:

''In all cases where not otherwise provided in which an officer, charged by law with the collection of revenue due the state, shall institute any proceeding, or take any steps for the collection of the sum alleged or claimed to be due, by said officer, from any citizen, the person against whom the proceeding or step is taken shall, if he conceives the same to be unjust or illegal, or against any statute or clause of the constitution of the state, pay the same under protest.''

Sections 1791, 1792, and 1793 of the Code provide for suit for the recovery of taxes paid under protest and if adjudged to have been illegally exacted of the taxpay-

er, repayment of such illegal exactions is required to "be paid in preference to other claims on the treasury."

Then follows section 1794 of the Code: "There shall be no other remedy in any case of the collection of revenue, or attempt to collect revenue illegally, or attempt to collect revenue in funds only receivable by said officer under the law, the same being other or different funds than such as the taxpayer may tender, or claim the right to pay, than that above provided."

And then section 1795 of the Code: "No writ for the prevention of the collection of any revenue claimed, or to hinder and delay the collection of the same, shall in anywise issue, either injunction, *supersedeas,* prohibition, or any other writ or process whatever; but in all cases in which, for any reason, any person shall claim that the tax so collected was wrongfully or illegally collected, the remedy for said party shall be as above provided, and in no other manner."

Considering the explicit prohibition of section 1795, we are unable to see how the issuance of the writs of *certiorari* and *supersedeas* by a Tennessee court to arrest a distress warrant in a case like this can be justified.

The sections of the Code quoted are taken from chapter 44 of the Acts of 1873. This act was declared to be constitutional in the case of *Louisville & Nashville R. Co.* v. *State of Tennessee et al.,* 55 Tenn. (8 Heisk.), 663, 805, and it was held in that case that the writs of *certiorari* and *supersedeas* would not issue to stay the collection of a tax.

The act of 1873 was considered by the Supreme Court of the United States in *Tennessee ex rel. Bloomstein* v. *Sneed,* 96 U. S., 69, 24 L. Ed., 610, and *Shelton* v. *Platt,* 139 U. S., 591, 11 S. Ct., 646, 35 L. Ed., 273, and treated

as affording to a taxpayer, of whom an illegal exaction had been made, an adequate remedy to protect his rights. In the more recent case of *Smallwood* v. *Gallardo,* 275 U. S., 56, 48 S. Gt., 23, 72 L. Ed., 152, that tribunal has approved a statute depriving the federal courts of authority to enjoin the collection of taxes in Porto Rico and held that the statute applied to suits brought prior to its enactment.

In *City of Nashville* v. *Smith,* 86 Tenn., 213, 6 S. W., 273, 275, a distress warrant issued to collect from the city of Nashville a privilege tax for the operation of waterworks. The city denied its liability and took the matter before the circuit court upon petition for *certiorari* and *supersedeas.* It was held that the city was not liable for this tax, but it was further held that insofar as the state tax was involved, as distinguished from the county tax, the petition must be dismissed, the court saying:

"For, however unjust or illegal the demand against the city may have been, the only course left open to it was to pay the state's part of the same under protest, and then sue for the recovery thereof within 30 days thereafter. No writ of injunction, *supersedeas,* or prohibition or other process can lawfully issue for the prevention of the collection of revenue claimed to be due the state."

It may be noted that chapter 44 of the Acts of 1873 was brought forward without change into the Code of 1932 and this is a sufficient answer to the contention of counsel that the provisions of that act are not applicable to present day conditions. The General Assembly of 1931 took a contrary view.

The court discussed chapter 44 of the Acts of 1873 in *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn.,

569, 260 S. W., 144, 151, where the corporation excise tax was under consideration, and said:

"Chapter 44, Acts of 1873, Shannon's Code, 1059 *et seq.,* provides a remedy for the taxpayer confronted by an unjust or illegal claim for taxes. The state cannot be postponed in the collection of its revenue, for the taxpayer must pay the tax under the conditions prescribed, as a condition precedent to contesting the liability for the tax or any part of it. The proceeding under the act of 1873 was not intended as the remedy for an erroneous or unjust assessment. Where the assessment of the *ad valorem* is challenged, the remedy of the taxpayer is as indicated in *Briscoe* v. *McMillan* [117 Tenn., 115, 100 S. W., 111], *Ward* v. *Alsup* [100 Tenn., 619, 46 S. W., 573], and other cases cited. Where the state's fiscal agents make an erroneous or illegal charge and require the taxpayer to pay more than the law authorizes them to collect, chapter 44, Acts of 1873, Shannon's Code, sec. 1059, supplies the remedy. *Phillips* v. *Lewis,* 3 Tenn. Cas., 230; *Atlas Powder Co.* v. *Goodloe,* 131 Tenn., 490, 499, 175 S. W., 547; *Western Oil Refining Co.* v. *Dalton,* 131 Tenn., 329, 174 S. W., 1138. Where the levy is in part unauthorized by law, the taxpayer may pay the tax under protest and recover to the extent of the illegal exaction."

Complaint is here made because the taxpayer had no notice of the assessment sought to be collected by the commissioner of finance and taxation and no opportunity was given for a hearing before the commissioner. We have undertaken to show in *East Tennessee Brewing Co.* v. *Currier,* 126 Tenn., 535, 150 S. W., 541, that it is sufficient, if at some stage of the proceedings the taxpayer is given an opportunity to be heard. The courts quite uniformly hold that an adequate hearing is provided by

statutes similar to the act of 1873. *Casco Co.* v. *Thurston County,* 163 Wash., 666, 2 P. (2d), 677, 77 A. L. R., 622; *Eddy* v. *Lee Tp.,* 73 Mich., 123, 40 N. W., 792; *Raleigh & G. R. Co.* v. *Lewis,* 99 N. C., 62, 5 S. E., 82; and other cases collected in a note, 77 A. L. R., 629.

We think there is no power in the courts of Tennessee to stay by injunction or *supersedeas* the collection of taxes due to the state when the whole substance of the taxpayer's contention is that the tax levied is excessive.

The chancellor expressed the opinion that section 9008 *et seq.* of the Code providing for the review of actions of boards or commissions gave him authority herein. We have indicated a contrary view in *Savage Co.* v. *Knoxville,* 167 Tenn., 642, 72 S. W. (2d), 1057, and *Anderson* v. *Memphis,* 167 Tenn., 648, 72 S. W. (2d), 1059. These sections are contained in article 5 of chapter 14 of the 1932 Code. In addition to what was said in the cases just mentioned, section 9014 by implication negatives the idea that the writ of *certiorari* here dealt with was intended to apply to revenue cases. The language of section 9014 is "At the expiration of ninety days from the filing of said transcript, the cause shall stand for trial, and shall be heard and determined at the earliest practical date, as one having precedence over other litigation, except suits involving state, county or municipal revenue."

This seems to contemplate revenue suits as suits apart from proceedings under these sections of the Code.

For the reasons stated, being of opinion that the chancellor has acted in this matter beyond his jurisdiction, the writs of *certiorari* and *supersedeas* sought by the commissioner and the sheriff are granted, and the writs of *certiorari* and *supersedeas* issued from the chancery court to stay the levy of the distress warrant are quashed.