RICHFORD SAVINGS BANK & TRUST COMPANY

*v.*

LESLIE B. THOMAS ET AL.

November Term, 1940.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 7, 1941

394

*Shangraw & Brown* for the plaintiff.

*McFeeters & Kissane* for the defendant.

SHERBURNE, J. This is a proceeding to enjoin the sale of certain real estate, known as the Quincy House property, located within the defendant municipalities, for taxes assessed thereon during the years 1930 to 1933 inclusive, and 1935 to 1937 inclusive, while the title thereto stood in the names of Robert G. Gilpin and Beatrice E. Gilpin, husband and wife. At the time this suit was commenced the plaintiff held a mortgage upon the property, but it has since taken a quit-claim deed of the same from the Gilpins. The defendant Thomas is the tax collector of each of the defendant municipalities. The case is here upon an appeal from a decree dismissing the bill of complaint.

The questions raised and briefed, in the order in which we shall consider them, are:

1. That the grand lists and quadrennial appraisals are defective because made by listers who were not elected by ballot and who failed to subscribe and file their oaths of office.

2. That the lists of the Gilpins are defective because their inventories, which included personal property, were not signed and sworn to by Mrs. Gilpin.

3. That the town tax bills are defective because made by selectmen who were not elected by ballot and who failed to subscribe and file their oaths of office.

4. That for the foregoing reasons the tax warrants issued by the treasurers of the defendant municipalities are illegal and void.

5. That No. 14 of the Acts of 1939 is unconstitutional.

6. That the collector failed to arrest the Gilpins or distrain their personal property, as required by law, before extending his warrant upon real estate.

7. That the notice of the tax sale was defective.

In view of the recent case of *Smith & Son, Inc.* v. *Town of Hartford et al.*, 109 Vt. 326, 196 Atl. 281, where as here

the listers were chosen by voting *viva voce* to instruct a named person to cast one ballot for the candidate for the office, and by such person casting such ballot, it is clear that, in the absence of a validating act, the collection of the taxes here in question cannot be enforced because the listers were not elected by the kind of ballot contemplated by P. L. 3432. And for the same reason the collection of the town taxes assessed upon the grand list by the selectmen, who were chosen in the same manner, cannot be enforced, because the same statute requires that they also be elected by ballot.

At the next session of the General Assembly after the decision of that case, No. 14 of the Acts of 1939 was enacted. Since the enactment of this act the validity of the taxes here in question depends upon its construction and effect. Section 1 provides:

> "The grand lists of all towns and municipal corporations for the years 1926 to 1938, both inclusive, are hereby declared to be legal and valid, and all taxes voted and assessed thereon are hereby declared to be legal and valid, unless a person questions the same as provided by section 6, and the failure of the listers to lodge said grand lists in the town clerk's offices of the various towns within the time and agreeably to the provisions prescribed by law, or the fact that said listers were improperly elected, or the fact that any other step or act required by law to be done and performed in the making of said grand lists or the assessment of any and all taxes thereon was omitted to be done, shall in no manner affect the validity or legality of said grand lists, or the taxes assessed or predicated thereon."

Section 2 legalizes quadrennial appraisals. Sections 3 and 4 provide:

> "Sec. 3. The selectmen of a town, or the prudential committee of an incorporated school or fire district, and other proper officers of a municipality, when legal tax bills have not previously been issued, or have been lost or destroyed, may prepare and issue new tax bills for any of the years specified in section 1 hereof, and said tax bills shall be

legal and valid. Said tax bill shall state that it is issued under the authority of this act.''

''Sec. 4. The selectmen or treasurer of a town or other officers authorized by law to issue warrants to a tax collector, when legal warrants have not previously been issued, or have been lost or destroyed, may prepare and issue new tax warrants for any of the years specified in section 1 hereof, and said tax warrants shall be legal and valid. Said warrant shall state that it is issued under the authority of this act. Said town or other municipality may thereafter proceed to collect the taxes in any manner authorized by law.''

Paragraph A of section 6 provides that within thirty days after the act becomes effective a person may appeal to the board of civil authority relative to the quadrennial appraisal in certain circumstances, and that a person who has not been notified as required by law with regard to any act of the listers as to the making, completing or filing of a grand list for the years specified, may also appeal. Paragraphs B and C of this section provide:

''B. A person who has vested right to question the validity of a tax on any ground not covered by the preceding paragraph, and who desires so to do, shall, within thirty days after this act becomes effective, pay said tax under protest and give written notice of the grounds in support of his claim of the invalidity thereof. Within thirty days after such payment said taxpayer shall bring an action for the recovery of said taxes so paid under protest.''

''C. A person who fails to comply with the provisions of this section shall be barred from asserting in any action at law or equity that such tax is invalid.''

We have a number of cases upon the power of the Legislature to validate quadrennial appraisals and grand lists, but we need refer to only *Grout* v. *Johnson*, 73 Vt. 268, 50 Atl. 1059, where

some of the other cases are cited. This case quotes the following rule laid down in *Cooley's Constitutional Limitations:*

> "If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by a subsequent statute."

It appears from this case and the others cited therein, that if the listers by unauthorized acts render a list invalid, or if the listers had failed to subscribe the required oath, or if the quadrennial appraisal was not deposited on a certain day, the Legislature had power to validate the grand list or quadrennial appraisal, because of the prerogative of the Legislature to establish a system of taxation and to direct towns in respect to the manner of making such appraisals and grand lists as the basis of taxation, which it has the right to change, unless some right of the taxpayer has become vested, and if an adequate right of appeal is granted by the special act the right of the taxpayer does not become vested. It also appears from this case that such a statute by validating a grand list also validates the taxes assessed upon such grand list before it was validated. It follows that such a statute by validating the taxes assessed upon the grand list also validates a tax warrant issued before such taxes were validated. See *Smith* v. *Hard,* 59 Vt. 13, 18, 8 Atl. 317.

Under Judge Cooley's rule, because the Legislature might have authorized that the listers and selectmen should be elected in the manner in which they were here chosen, and need not have required oaths of office from them, and might have dispensed with inventories to be signed by taxpayers, a special act can validate tax proceedings in which the general law was not complied with in these respects.

No question is now made but that the 1939 statute sufficiently validates the quadrennial appraisals and grand lists of the defendant municipalities, but it is contended that it entirely fails to legalize tax bills and tax warrants issued, as in this case, prior to its enactment, when such tax bills were made by officials who were not elected by ballot.

Taxes are assessed upon the grand list of a municipality by means of tax bills made out and delivered to the collector or treasurer by the proper officers. In the case of towns this duty devolves upon the selectmen. P. L. 3484. In the case of defendant village this duty devolves upon its trustees, Sec. 10 of No. 195 of the Acts of 1886, and in case of defendant school district upon its prudential committee, P. L. 4382. No question is made about the election of such trustees and prudential committee, so the plaintiff's objection goes only to the defendant town's taxes.

Section 1 of the act is sufficiently comprehensive to validate the taxes assessed upon the grand lists by the tax bills made out by the selectmen, under Judge Cooley's rule as we have above applied it to the selectmen, and legalizes such tax bills, unless sections 3 and 4 show a different intent.

Different sections of the same act which take effect at the same time should be harmonized if it can be done reasonably. *Anderson* v. *Souliere,* 103 Vt. 10, 151 Atl. 509; *Brace et al.* v. *Hulett, Admr.,* 109 Vt. 360, 366, 196 Atl. 742. Stated in other words, a construction that creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the act, and will carry out the intention of the Legislature. *United States* v. *Raynor,* 302 U. S. 540, 547, 58 Sup. Ct. 353, 82 L. Ed. 413, 418; *New Lamp Chimney Co.* v. *Ansonia Brass & Copper Co.,* 91 U. S. 656, 663, 23 L. Ed. 336, 339. See, also, *Wescott* v. *Briere, post,* 403, 17 Atl. 2d. 244.

As bearing upon the intention of the Legislature the provisions of section 6 must also be taken into consideration. Both section 1 and section 6 speak of the validity of the tax, which necessarily covers the tax bills, as that is where the amount and apportionment of the tax is arrived at. Sections 3 and 4 provide that the proper officials may prepare and issue new tax bills when legal tax bills have not previously been issued, or have been lost or destroyed, and may issue new warrants under like circumstances. As section 1 legalizes the tax bills as against the objections here made, it is reasonable to conclude, without doing violence to the plain words of the act, that the language used in sections 3 and 4 refers to tax bills and warrants that cannot be legalized by the Legislature, or that are not legalized by

the language used in section 1. We need not determine what the effect would be, but it may be that, if the tax bills had been prepared and issued by persons who could not claim to be even *de facto* selectmen, the Legislature could not, or the language of section 1 would not, validate such tax bills.

Under its claim that the act is unconstitutional the plaintiff merely says that paragraph B. of section 6 is contrary to the spirit of our Constitution and of the concept of due process of law, because it places the burden upon the taxpayer to show that the requirements of the law have not been complied with. It is generally accepted that a statute providing for the payment of a tax as a condition precedent to testing its correctness and validity does not violate the due process provision. *Cooley on Taxation,* 4th ed. Sec. 143; *Exchange Bank Tax Cases,* 21 Fed. 99, affirmed in 122 U. S. 154, 7 Sup. Ct. 1244, 30 L. Ed. 1088; *Snyder* v. *Marks,* 109 U. S. 189, 3 Sup. Ct. 157, 27 L. Ed. 901; *Shelton* v. *Platt,* 139 U. S. 591, 11 Sup. Ct. 646, 35 L. Ed. 273; *Exchange Oil Co.* v. *State,* 80 Okla. 52, 193 Pac. 999; *Eddy* v. *Township of Lee,* 73 Mich. 123, 40 N. W. 792. We find nothing in the paragraph referred to as respects the objection raised, or as applied to the circumstances of this case, that is contrary to our Constitution or the due process provision.

Under the contention that the collector failed to either arrest the Gilpins or distrain personal property before levying upon real estate we are referred to P. L. 805. As amended by section 1 of No. 25 of the Acts of 1939, in force at the time of the attempted levy, the first sentence of this section reads: "When the collector cannot find in his town personal estate of a delinquent taxpayer against whom he has a tax assessed in such town he may extend his warrant on any land in the town owned by such person." This does not make the arrest of a delinquent taxpayer a prerequisite to a levy upon real estate. But, as the chancellor has found that the Gilpins owned some personal property, but not of sufficient value to have realized upon sale an amount sufficient to have paid all of the outstanding taxes upon the real estate, we must determine what the duty of the collector was in the circumstances. As to whether there was sufficient personal property to have satisfied any one of the several tax bills does not appear.

The plaintiff contends that under the statute the collector

must first resort to the personal property, even though enough cannot be realized therefrom to satisfy the tax, before he can sell real estate. On the other hand, defendants contend that it is not necessary to first resort to the personal property unless it is sufficient to satisfy the tax. Both sides rely upon *Fulton et al.* v. *Aldrich et al.,* 76 Vt. 310, 57 Atl. 108, but that case does not answer the question here.

 As a taxing statute is not to be extended by implication beyond the clear import of the language used, and doubts are to be resolved against the taxing power and in favor of the taxpayer, *First National Bank of Boston* v. *Harvey, ante,* 281, 16 Atl. 2d. 184, and cases cited, we cannot by implication read into this statute the words ''sufficient to satisfy the tax'', and we therefore hold, that when the collector finds any personal property of a delinquent taxpayer he must first sell the same before extending his warrant upon real estate. The enforcement of a tax is a proceeding *in invitum* and the requirements of the statute must be strictly complied with. *Cummings* v. *Holt,* 56 Vt. 384; *Smith & Son, Inc.* v. *Town of Hartford,* 109 Vt. 326, 332, 333, 196 Atl. 281. The pending sale should have been enjoined.

If, after exhausting the personal property, the collector again levies upon this real estate, a new notice will have to be given, so that we need not pass upon the sufficiency of the present notice.

*Decree reversed, and it is ordered, adjudged and decreed that the defendants, and their representatives, be enjoined from levying upon and selling the so-called Quincy House Property upon their tax warrants against Robert G. Gilpin and Beatrice E. Gilpin for the years 1930 to 1933 inclusive and 1935 to 1937, inclusive, until such time as they have distrained and sold the available personal property of said Gilpins. Let the plaintiff recover its costs.*