[Civ. No. 24210. Second Dist., Div. Two. Oct. 17, 1960.]

THE PEOPLE, Respondent, v. JOHN P. SONLEITNER, Appellant.

Samuel Duskin and David S. Smith for Appellant.

Stanley Mosk, Attorney General, and Dan Kaufmann, Assistant Attorney General, for Respondent.

RICHARDS, J. pro tem.*—Defendant appeals from a judgment against him and in favor of the plaintiff in the amount of $130,264.49, together with interest and costs, in an action to collect motor vehicle fuel license taxes under the Motor Vehicle Fuel License Tax Law based upon a jeopardy determination made by the State Board of Equalization pursuant to article 4, chapter 5, part 2, division 2 of the Revenue and Taxation Code.

For the privilege of distributing motor vehicle fuel a license tax is imposed upon distributors by Revenue and Taxation Code, section 7351. (All section references hereafter are to the Revenue and Taxation Code unless otherwise indicated.) A distributor of motor vehicle fuel is required to be licensed by section 7451.[1] The defendant was not so licensed although during part of the period here involved he was licensed as a broker. The State Board of Equalization (hereinafter referred to as the "board") ascertained that the defendant made taxable distributions of motor vehicle fuel within the State of California during the period from November 1, 1951, to and including July 31, 1955. Section 7726 provides, in part: "If any person becomes a distributor without first securing a license, the license tax becomes immediately due and payable on account of all motor vehicle fuel distributions made by him." Pursuant to section 7727,[2] the board ascertained as

___

[1] Section 7451: "Every person before becoming a distributor shall apply to the board for a license authorizing the person to engage in business as a distributor. . . ."

[2] Section 7727: "The Board shall forthwith ascertain as best it may the amount of the distributions and shall determine immediately the license tax on the amount, adding to the license tax a penalty of 100 per cent of the amount of the tax, and shall give the unlicensed distributor notice of this determination as prescribed by Section 7493. Provisions of Sections 7699 and 7700 shall be applicable with respect to the finality of the determination and the right of the unlicensed distributor to petition for a redetermination."

*Assigned by Chairman of Judicial Council.

best it could the amount of the unlicensed distributions and on November 14, 1955, determined the license tax on such amount, adding the mandatory penalty of 100 per cent of the amount of the tax and interest and gave defendant notice of the jeopardy determination as prescribed by section 7493. It is provided by section 7699 that if the total amount specified in the jeopardy determination is not paid within 10 days after service of the notice, the determination becomes final unless a petition for redetermination is filed within said period.

Section 7700 provides, in part: "The distributor against whom a jeopardy determination is made may petition for a redetermination thereof pursuant to Article 3.5 of this chapter. . . . At the time of filing the petition for redetermination, the distributor shall deposit with the board such security as it may deem necessary to insure compliance with this part." Pursuant to said section the board fixed the amount of security which it deemed necessary to insure compliance in an amount equal to the total amount of the jeopardy determination and advised the defendant in the notice of determination that a petition for redetermination was required to be filed by November 29, 1955, and that the security fixed accompany the petition. Prior to November 29, 1955, the defendant, through his counsel, forwarded a letter to the board purporting to be a petition for redetermination but failed to post the required security, the letter stating that the "licensee does not have the financial ability to post the security requested" but did not request a reduction in the required security nor offer to post security in any amount. Thereafter, on December 5, 1955, the board advised the defendant that it could not accept the letter as a petition for redetermination in view of the failure of the defendant to post the required security and that if the defendant believed the amount determined to be excessive, he should confer with the District Tax Administrator and if the defendant could establish that the tax as determined was excessive, an appropriate adjustment would be made.

On December 15, 1955, counsel for defendant forwarded another letter to the board requesting that it be considered as an appeal for a hearing of the petition for redetermination and for granting relief from the refusal of the board to entertain the petition, stating the licensee's purpose "to exhaust his administrative remedies." On December 22, 1955, the board advised defendant's counsel that it could not consider the purported petition by reason of the defendant's failure to deposit the required security and that in the absence of

payment of the amount due, no further administrative remedy was provided under the act but that there would be a possibility of a refund after payment or an action for refund following payment under protest. At the trial the plaintiff introduced certified copies of the jeopardy determination and the correspondence between the board and defendant's counsel above referred to and then rested its case. Defendant then sought to put on evidence to rebut the determination, to which plaintiff objected on the ground that the defendant had failed to exhaust his administrative remedies. The objection was sustained although the defendant was permitted to introduce evidence relating to his financial condition at the time of the determination. The court found in favor of plaintiff substantially as above set forth and further found: ". . . that at no time did defendant furnish the plaintiff with any evidence of his financial status; nor did he post the required security or pay the amount of the determination, or any portion thereof; that as of the date of the receipt of the Board's determination of taxes due by defendant, the defendant was financially unable to post security in the amount of $129,827.44." The court concluded that defendant was indebted to the state by reason of the board's determination having become final without payment by the defendant and further concluded that: "Defendant is precluded from challenging the validity of the determination of the board prior to payment of the determination by reason of the fact that the defendant failed to exhaust his administrative remedies for challenging such determination prior to payment by failing to file a petition for redetermination accompanied by security required by the board as prescribed by sections 7727 and 7700 of the Revenue and Taxation Code."

## Due Process in Taxation

[██] Defendant contends that he has been deprived of due process by the refusal of the trial court in this proceeding to permit him to attack the jeopardy determination by reason of his failure to exhaust an administrative remedy. This contention presents the question of what constitutes procedural due process in the levy and collection of taxes.

The California Legislature has established a pattern in excise tax acts for jeopardy determinations and administrative review thereof conditioned upon the posting of security. The Motor Vehicle Fuel License Tax Law here involved provides for jeopardy determinations both as to a bonded licensed

distributor, sections 7698 and 7699, and as to an unlicensed distributor, sections 7726 and 7727, and then provides for a hearing and reconsideration of the determination by the board (§ 7711) upon a petition for redetermination, provided the distributor shall have deposited with the board "such security as it may deem necessary to insure compliance with this part." (§ 7700.) The Sales and Use Tax Law likewise provides for jeopardy determinations (§ 6536) and for reconsideration by the board (§ 6562) upon a petition for redetermination, provided the petitioner shall have deposited with the board "such security as it may deem necessary to insure compliance with this part." (§ 6538.) Without detailed delineation, the Use Fuel Tax Law similarly provides for jeopardy determinations and right to redetermination by the board upon petition accompanied by security fixed by the board (§§ 8826, 8828 and 8852). Likewise, the Motor Vehicle Transportation License Tax Law (§§ 9911, 9913 and 9927). Provision for jeopardy assessments is made in the Personal Income Tax Law (§ 18641) and for reassessment (§ 18645) upon petition accompanied by security "in such amount as the Franchise Tax Board may deem necessary, not exceeding double the amount (including interest and penalties and additions thereto). . . ." (§ 18643.) Also, in the Bank and Corporation Tax Law (§ 25761) where the posting of security as deemed necessary by the Franchise Tax Board "not exceeding double the amount, including interest, penalties, and additions thereto" is a condition to a hearing (§ 25761a). Similar provision for jeopardy determinations is made in the Alcoholic Beverage Tax Law (§ 32311) and for redetermination upon petition and posting security as deemed necessary by the board (§ 32312).

Thus we find under the law in question, as well as under other excise tax laws, the Legislature has provided that a designated administrative agency, where it appears that a person is engaging in a taxable operation without compliance with the tax law applicable thereto, may determine as best it may the tax due, and has further provided for an opportunity for the taxpayer to be heard by the designated agency to challenge the determination upon the posting of security as authorized by the Legislature and fixed by the board.

It may be stated as a general rule that the due process clause of the federal Constitution is satisfied in matters of taxation if, at some stage before a tax becomes irrevocably fixed the taxpayer is given the right, of which he shall have notice, to contest the validity or amount of the tax before a

board or tribunal provided for that purpose. (*Nickey* v. *Mississippi*, 292 U.S. 393 [54 S.Ct. 743, 78 L.Ed. 1323, 1326] ; *McGregor* v. *Hogan*, 263 U.S. 234 [44 S.Ct. 50, 68 L.Ed. 282, 283] ; *Turner* v. *Wade*, 254 U.S. 64 [41 S.Ct. 27, 65 L.Ed. 134, 137] ; *Hodge* v. *Muscatine County*, 196 U.S. 276 [25 S.Ct. 237, 49 L.Ed. 477, 481] ; *Gallup* v. *Schmidt*, 183 U.S. 300 [22 S.Ct. 162, 46 L.Ed. 207, 213].)

In the leading case of *People* v. *Skinner*, 18 Cal.2d 349 [115 P.2d 488, 149 A.L.R. 299], which we deem controlling and from which we will quote at some length because of its comprehensive consideration of the problem of ''due process'' as applied to taxation by the sovereign, the Supreme Court was presented with a challenge to the constitutionality of the provisions of the Retail Sales Act of 1933, permitting the state to file with the county clerk its certificate of the amount of tax, interest and penalty due, and obtain a judgment summarily. To the argument that the act offended constitutional due process, the court said (p. 354) : ''Obviously if an action in a court or other judicial tribunal be necessary for a judgment for the collection of taxes, the state is bound by the provisions applicable to the conduct of such action, and by the general law governing jurisdiction of parties and subject matter. But as long standing as the common law itself is the rule that a more summary method may be provided for the collection of taxes due to the sovereign than is provided for the recovery of judgment for debts between private citizens. This power of government received early recognition in this country. The case of *Den ex dem. Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272 [15 L.Ed. 372], involved the collection of moneys from a defalcating customs inspector. Summary seizure of property to satisfy the debt was objected to on the ground of lack of due process. The court said : 'The words, ''due process of law,'' were undoubtedly intended to convey the same meaning as the words, ''by the law of the land'' in *Magna Carta*. . . . We apprehend there has been no period, since the establishment of the English monarchy, when there has not been, by the law of the land, a summary method for the recovery of debts due to the crown. . . . It is certain that this diversity in the ''law of the land'' between public defaulters and ordinary debtors was understood in this country, and entered into the legislation of the colonies and provinces, and more especially of the States, after the declaration of independence and before the formation of the constitution of the United States. . . . For, though

"due process of law" generally implies and includes *actor, reus, judex,* regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings . . . yet, this is not universally true. There may be, and we have seen that there are cases, under the law of England after *Magna Carta,* and as it was brought to this country and acted on here, in which process, in its nature final, issues against the body, lands and goods of certain public debtors without any such trial. . . . The power to collect and disburse revenue, and to make all laws which shall be necessary and proper for carrying that power into effect, includes all known and appropriate means of effectually collecting and disbursing that revenue, unless some such means should be forbidden in some other part of the constitution. . . . It may be added, that probably there are few governments which do or can permit their claims for public taxes . . . to become subjects of judicial controversy, according to the course of the law of the land. Imperative necessity has forced a distinction between such claims and all others, which has sometimes been carried out by summary methods of proceeding, and sometimes by fines and penalties, but always in some way observed and yielded to.'

"*Springer* v. *United States,* 102 U.S. 586 [26 L.Ed. 253], involved a summary method of execution and collection of personal income taxes, objected to under the constitutional guaranty of due process. In holding that congress could provide the power to distrain realty as well as personalty, the court said: 'The proceedings of the collector were not in conflict with the amendment to the constitution which declares that "no person shall be deprived of life, liberty, or property without due process of law." . . . The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every taxpayer is entitled to the delays of litigation is unreason. If the laws here in question involved any wrong or unnecessary harshness, it was for Congress, or the people who make Congresses, to see that the evil was corrected. The remedy does not lie with the judicial branch of the government.'

"It has been held that due process is satisfied if notice and an opportunity to question the validity or amount of the tax be provided for at some stage in the proceedings; that the notice does not have to be personally served; that notice of every step in the proceedings is not required; and that it is sufficient if the finality of the assessment be determined by the taxing authorities. [Citations.]"

(P. 356) : "In the discussion of the general subject of the system of enforcing the government's claims for taxes, the court said in *Bull* v. *United States*, 295 U.S. 247, 259 [55 S.Ct. 695, 79 L.Ed. 1421] : 'A tax is an exaction by the sovereign, and necessarily has an enforcible claim against every one within the taxable class for the amount lawfully due from him. The statute prescribes the rule of taxation. Some machinery must be provided for applying the rule to the facts in each taxpayer's case, in order to ascertain the amount due. The chosen instrumentality for the purpose is an administrative agency whose action is called an assessment. The assessment may be a valuation of property subject to taxation which valuation is to be multiplied by the statutory rule to ascertain the amount of tax. Or it may include the calculation and fix the amount of tax payable, and assessments of federal estate and income taxes are of this type. Once the tax is assessed the taxpayer will owe the sovereign the amount when the date fixed by law for payment arrives. Default in meeting the obligation calls for some procedure whereby payment can be enforced. The statute might remit the Government to an action at law wherein the taxpayer could offer such defense as he had. A judgment against him might be collected by the levy of an execution. But taxes are the life-blood of government, and their prompt and certain availability an imperious need. Time out of mind, therefore, the sovereign has resorted to more drastic means of collection. The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt.

" 'In recognition of the fact that erroneous determinations and assessments will inevitably occur, the statutes, in a spirit of fairness, invariably afford the taxpayer an opportunity at some stage to have mistakes rectified. Often an administrative hearing is afforded before the assessment becomes final; or administrative machinery is provided whereby an erroneous collection may be refunded; in some instances both administrative relief and redress by an action against the sovereign in one of its courts are permitted methods of restitution of excessive or illegal exaction. Thus the usual procedure for the recovery of debts is reversed in the field of taxation. Payment precedes defense, and the burden of proof, normally on the claimant, is shifted to the taxpayer. The assessment supersedes the pleading, proof and judgment necessary in an

action at law, and has the force of such a judgment. The ordinary defendant stands in judgment only after a hearing. The taxpayer often is afforded his hearing after judgment and after payment, and his only redress for unjust administrative action is the right to claim restitution.' "

■■ Among the California authorities reviewed and quoted in *Skinner* is *Wulzen* v. *Board of Supervisors*, 101 Cal. 15 [35 P. 353, 40 Am.St.Rep. 17], which deals with the question of whether the right to review by a city council in a street improvement proceeding constituted due process, to which the court answered at page 20: "Administrative process, it has been said, of the customary sort, is as much *due process of law* as judicial process."

In *Modern Barber Colleges* v. *California Emp. Stab. Com.*, 31 Cal.2d 720 [192 P.2d 916], the taxpayer sought a writ of mandate to compel the commission to vacate a finding that petitioner was an employer under the Unemployment Insurance Act. ■■ As to whether denial of the remedy of mandate would deprive the petitioner of due process, the court said at page 725: "The due process clause does not guarantee the right to judicial review of tax liability before payment."

Defendant has cited numerous California decisions which are mainly generalizations on the law of due process and which, with one exception, do not even remotely involve the question of due process in taxation. *Chase* v. *City Treasurer Los Angeles*, 122 Cal. 540 [55 P. 414], cited by defendant, holds that an injunction will lie to restrain the threatened sale of real property to pay an amount claimed to be due on a void street bond where the defects in the street improvement proceedings were such that they could not have been remedied by an appeal to the city council. The Supreme Court in *McLaughlin* v. *Knobloch*, 161 Cal. 676 [120 P. 27], pointed out that the decision in the Chase case had no application to matters which could be reviewed by the city council and that a failure to seek review of such matters precluded the right of injunctive relief.

■■ Summarizing this point, we quote a statement which the Supreme Court quoted in *People* v. *Skinner, supra*, 18 Cal.2d 349, at page 360: "From all the authorities, it is evident that the state has the power to assess taxes and fix methods for the collection thereof, and it does not matter if these remedies be summary in their nature, so long as the taxpayer is in some way, at some stage of the proceedings,

given an opportunity to be heard and have his rights determined before some competent tribunal."

## Exhaustion of Administrative Review in Tax Matters

This brings us to the next contention raised by defendant, which is the applicability of the doctrine of exhaustion of administrative remedies in judicial proceedings involving tax matters. As has been pointed out, the defendant requested a redetermination, but did not accompany that request with a posting of the security deemed necessary by the board. Having failed to post the security as required, the defendant failed to file an effective petition for redetermination and thus failed to exhaust his administrative remedies. Apparently defendant does not entirely disagree that administrative relief must be exhausted before resort to judicial review for he states in his brief: "Appellant concedes that administrative relief must be pursued where required, available, and not violative of constitutional safeguards."

That the doctrine is applicable to tax matters is well established. *People* v. *West Publishing Co.*, 35 Cal.2d 80 [216 P.2d 441], is strikingly analogous. There the Supreme Court said, p. 87: "Thus, appellant, though subject to the provisions of the Use Tax Act and accordingly required to file returns, nevertheless failed to so comply with the statute; it thereby became necessary for the board to determine appellant's use tax liability on an estimated basis and so notify appellant (§ 10) ; and appellant made no 'petition for a redetermination' but permitted the amount so determined by the board to become final (§ 12). Yet now appellant seeks a reduction in the amount of its use tax assessment for reasons which it neglected and refused to present to the administrative agency expressly empowered to determine and dispose of disputed issues of liability in the granting of appropriate relief. Here appellant not only has failed to exhaust its administrative remedies, but it has neglected to make any use of the orderly procedure provided for securing a correct tax assessment before judicial redress is sought. Analogous considerations were before this court in *West Publishing Co.* v. *McColgan, supra,* 27 Cal.2d 705, where appellant as plaintiff, seeking a refund of the corporation income tax collected from it for certain taxable years, had failed to file returns under the governing act for the period involved and to furnish information therefor to the commissioner, who was thereupon required to make an estimated assessment pursuant to the

terms of the statute. In such situation, it was pertinently said at page 712: 'Plaintiff cannot complain of alleged errors in the computation of tax liability, when it refused to avail itself of its administrative remedies to prevent or correct such errors.' "

*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 291 [109 P.2d 942, 132 A.L.R. 715]: "The Unemployment Insurance Act, summarized above, contains a complete administrative procedure, with provision for one original determination and two appeals, fulfilling every requisite of due process of law. Until that administrative procedure has been invoked and completed, there is nothing that the District Court of Appeal or any other court may review; it cannot interfere in the intermediate stages of the proceedings. The employers have no standing to ask for judicial relief because they have not yet exhausted the remedies given them by the statute. . . .

"This is the doctrine of 'exhaustion of administrative remedies.' In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (P. 292.)

In *People* v. *Keith Railway Equipment Co.*, 70 Cal.App. 2d 339 [161 P.2d 244] (hearing den.), action was brought by the state to recover taxes due under the Private Car Tax Act of 1937. Defendant had failed to file a report as required, and the State Board of Equalization estimated the number of defendant's private cars operated on railroads in the state, placed an assessed valuation thereon and notified defendant of such action. Defendant failed to petition for reassessment, and the board levied the tax which was the subject of the action. In affirming a judgment for the state, the court said at page 346: "Having failed to avail itself of the remedy provided by the act and failed to exhaust or even to take advantage of its administrative remedy, it cannot secure judicial relief and seek to have the court, in an action such as this is, review and condemn the method by which the board arrived at its conclusions, and secure a determination by a court of matters properly determinable by the board.

"One complaining of administrative action must, before seeking judicial relief, exhaust his remedies before the administrative body of whose action he complains. [Citation.] This rule involves a policy of procedure which favors a preliminary sifting process by the established administrative agency which is authorized to take evidence and determine

facts; and while in this state it is held that the findings of fact of purely administrative agencies may be reviewed by the courts in proper proceedings, nevertheless litigants may not, by refusing or neglecting to submit issues of fact to such agencies, by-pass them, and call upon the courts to determine in a suit such as this, matters properly determinable originally by such agencies. [Citations.]''

### Applicability of Exhaustion Rule Exception

■ Defendant contends that in attempting to show that he was not a distributor as defined by the act, the instant case falls within an exception to the doctrine of exhaustion of administrative remedies as set forth in *Security-First Nat. Bank* v. *County of Los Angeles*, 35 Cal.2d 319 [217 P.2d 946], and *City & County of San Francisco* v. *County of San Mateo*, 36 Cal.2d 196 [222 P.2d 860]. In the first place the record does not disclose any evidence or offer of proof by defendant that he was not a distributor as defined by the act. The only offer of proof was that much of the ''deficiency'' was due to change of temperature conditions and that in making its audit the board based its determination as to two of the four years on gross rather than net gallonage purchases. In arguing the offer of proof, counsel for defendant stated that ''the whole evidence goes to the discrepancy, that their determination was not correct, in the first place, and if any evidence pertaining to the determination is going to be held inadmissible, it would be foolish to waste the court's time.'' In the second place, we are convinced that the exception does not apply as contended. In *Security-First Nat. Bank* v. *County of Los Angeles, supra,* the plaintiff's bank vault doors and counterlines had been assessed as realty, and the plaintiff had not applied to the board of equalization for correction of the assertedly erroneous assessment. The court said at page 320: ''It is the general rule that a taxpayer seeking judicial relief from an erroneous assessment must have exhausted his remedies before the administrative body empowered initially to correct the error. [Citations.] An exception is made when the attempted assessment is a nullity because the property is either tax exempt or outside the jurisdiction. [Citations.] But resort to the board of equalization is not rendered unnecessary by the fact that, as in the present case, the error is one in the classification of property [citations] and the tax is assailed as being discriminatory in violation of constitutional mandates [citations] or section 5219 of the Revised Statutes

of the United States. [Citations.]'' The court proceeds to point out that the problem was not one of exemption of property, but of classification thereof within the power of the Board of Equalization to rectify; hence, the plaintiff did not come within the exception stated. *City & County of San Francisco* v. *County of San Mateo, supra,* involved an attempted recovery of taxes paid by the plaintiff to defendant based upon an assessment of submerged land filled by the plaintiff for an airport. Holding that the fill did not create taxable land, but was a non-taxable improvement constructed by the plaintiff municipality, the court nevertheless denied plaintiff relief because of its failure to exhaust the administrative remedy provided to correct the alleged error, stating at page 201: ''If the city was dissatisfied with the assessment as an accumulated increase in the value of the taxable property, it was necessary to apply to the state board for review and adjustment prior to pursuing the remedy for refund of taxes paid under protest. [Citations.] We therefore have a problem of 'equalization and adjustment' confided by the Constitution to the State Board of Equalization. It is the province of the board to 'adjust' the assessment so that the exempt and the non-exempt portions of the property be properly segregated.''

We can observe no substantial difference between the authority of a board of equalization to determine whether property is real or personal, or whether a fill created assessable land or was a municipal improvement, and the authority of the board in the instant case to determine whether or not defendant was a ''distributor'' as defined by the act.

In *Louis Eckert Brewing Co.* v. *Unemployment Reserves Com.,* 47 Cal.App.2d 844 [119 P.2d 227] (hearing den.), defendant contended that the exhaustion of administrative remedy rule did not apply before recourse to the court in ''determining a dispute as to whether any certain person falls within the scope of the act and is therefore subject to such administration.'' (P. 847.) The court answered this contention by saying: ''[I]t is well within the province of the commission to determine for purposes of imposing the tax whether plaintiff corporation is an employer. An administrative proceeding, therefore, was and is available to plaintiff under the Unemployment Insurance Act to determine this very matter, and exhaustion of administrative remedy is a jurisdictional prerequisite to resort to the courts.'' In *People* v. *West Publishing Co., supra,* 35 Cal.2d 80, in an action brought on a jeopardy determination under the Use Tax Act, the defendant

sought to challenge the inclusion of a tax on its mail order sales, not having sought an administrative review thereof. The Supreme Court in answer thereto said at page 88 : ''Appellant argues that since its objections to the use tax assessment only involve questions of law as distinguished from pure issues of fact, it was not required to present its contentions first to the board before asserting them in this litigation. But in the effective performance of its designated functions under the terms of the Use Tax Act, the board necessarily must pass upon matters of both law and fact, and though the ' [a]dministrative determination of questions of law is subject to judicial review upon which the courts may substitute their own judgment for the administrative determination' [citations], the board nevertheless should be afforded the opportunity to rectify any determination it has made and consider a revision of its tax assessment. [Citations.] This principle of initial resort to prescribed administrative processes has received particular emphasis in tax enforcement cases.''

Defendant places reliance upon *Schmidt* v. *Santa Monica Commercial Co.*, 39 Cal.App. 85 [178 P. 315], a street assessment lien foreclosure case in which the court held that the defendant was entitled to establish in the foreclosure action that no contract had in fact ever been entered into for the performance of the improvement. In that case the plaintiff contended that the defendant could not urge the point because it had not appealed to the city council as provided in the Street Improvement Act involved. The court held plaintiff's contention untenable, not because the defendant was not required to exhaust his administrative remedies, but for the reason that the nonexistence of a contract was not, within the terms of the act, a defect which could have been remedied by the city council upon an appeal. In other words, the law itself did not require an objection of the nature made by the defendant to be taken to the city council.

We are convinced that the rule of exhaustion of administrative remedies applies in case the person seeks to establish that his activities do not bring him within the orbit of the tax law under which he has been assessed.

*Is Requirement of Security as Condition for Administrative Review Denial of Due Process?*

In a sense none of the foregoing points raise the basic issue urged by the defendant in this appeal, which is thus phrased in his closing brief : ''It was, and still is, an af-

front to due process and justice to contend that, because financial inability of the appellant resulted in denial to him to review within the administrative processes, defendant was therefore and automatically not entitled to assert any defense in what was to be a trial on the merits.''

In essence it would appear that defendant is contending that the requirement of the law that security be deposited as a condition to an administrative review constitutes a denial of due process. We do not deem the contention tenable.

 In considering this contention we have in mind the rule stated in *State Savings etc. Bank* v. *Anderson,* 165 Cal. 437, 447 [132 P. 755, L.R.A. 1915E 675], quoting from *Davidson* v. *New Orleans,* 96 U.S. 97 [24 L.Ed. 616], that ''In judging what is 'due process of law' respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for legal improvements, or some of these; and if found to be suitable or admissible in the special case, it will be adjudged to be 'due process of law'; but if found to be arbitrary, oppressive and unjust, it may be declared to be not 'due process of law.' '' Due process signifies, as said in *Wulzen* v. *Board of Supervisors,* 101 Cal. 15, 20 [35 P. 353, 4 Am.St.Rep. 17] : ''[S]uch an exercise of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs.''

We are here dealing with a class of case involving the power of the state to, in effect, recover from a distributor of motor vehicle fuel the taxes thereon which have been paid to him by the consumer. ''The clear intent of the law [Gasoline Tax Act of 1923] was to levy an excise or occupation tax upon distributors of motor vehicle fuel, giving such distributors, however, ample opportunity to fully indemnify themselves by adding the amount of the tax to the selling price of the fuel and thus in effect collect the tax from the consumer.'' (*People* v. *Ventura Refining Co.,* 204 Cal. 286, 294 [268 P. 347, 283 P. 60].)

The Legislature has provided, as has been pointed out, that those engaged in the business of distributing motor vehicle fuel must be licensed and must post a bond to secure payment of the license tax as it accrues monthly. The act then provides that, as to those who are unlicensed but whom the board finds are engaged in a taxable distribution of motor vehicle fuel, the

license tax becomes immediately due and appropriate methods are provided for the collection thereof. There is nothing novel in the Motor Vehicle Fuel License Tax Law in its procedural aspects relating to the determination and collection of unpaid taxes as is indicated by the earlier comparison with other license tax acts. Nor is there anything novel in the basic proposition in the field of taxation that more drastic means of collection are justified within the concept of due process than would be countenanced in private transactions. As the United States Supreme Court said in *Bull* v. *United States,* 295 U.S. 247 [55 S.Ct. 695, 79 L.Ed. 1421], quoted at length in *People* v. *Skinner, supra,* 18 Cal.2d 349, 357 : ''The taxpayer often is afforded his hearing after judgment and after payment, and his only redress for unjust administrative action is the right to claim restitution.'' The same view is expressed in *Modern Barber Colleges* v. *California Emp. Stab. Com., supra,* 31 Cal. 2d 720, 733 : ''Since it appears that the petitioner has no right under the federal or California Constitutions to obtain judicial review of his tax liability before he paid the amount allegedly due, the Legislature can constitutionally provide that his only remedy is the suit to recover alleged overpayments, and it can prohibit the use of mandamus in advance of payment.''

We are not here dealing with the supposititious case suggested at the argument that the levy and suit may have been against the wrong John P. Sonleitner. We are dealing with the defendant who, during the four-year period involved, operated four gasoline service stations, and it is clear from the rejected offer of proof that defendant was seeking to contest the accuracy of the board's determination of the extent of taxable distributions and thus the amount of the tax rather than the existence of taxable distributions. While it is true that in the notice of the jeopardy determination the board specified the amount of security which must accompany a petition for redetermination, there is no showing that the defendant sought any reduction in the amount thereof, nor is there any showing of an offer by defendant to deposit security in any amount.

A contention closely analogous was under consideration by the Massachusetts Supreme Court in *Old Colony R. Co.* v. *Assessors of Boston,* 306 Mass. 439 [35 N.E.2d 246], in which the taxpayer contended that a statutory provision requiring payment of an assessed ad valorem tax as a condition to administrative review thereof was violative of the due process clause.

The court said, at page 249 : "The issue presented is whether the Commonwealth can condition recourse to this remedy upon the payment of the tax. The answer is to be found in observing, in a practical way, the relation between the necessity of the State for revenue and the obligation of the citizen to bear his share of the expense of his government. The prompt payment of taxes is necessary for the orderly functioning of government [citations], and a citizen, contending his assessment is excessive, has no right superior to the demand for payment to withhold the entire tax until he can secure an adjudication of the amount due." At page 250: "The disruption of the tax system that would be occasioned by the refusal of a taxpayer to pay the tax until he could secure a final judgment on the amount of his liability may be avoided, and the fundamental right of the citizen safeguarded, by providing for the payment of the tax and an appropriate remedy for an abatement of that portion subsequently found to be excessive. Statutes in various States have so provided and made payment of the tax a condition precedent to seeking relief from an excessive tax. . . . It was said in *Cheatham* v. *United States,* 92 U.S. 85, at page 89 [23 L.Ed. 561], in speaking of the necessity of the taxpayer complying with conditions precedent to recover an illegal tax paid to the United States, that 'if the compliance with this condition requires the party aggrieved to pay the money, he must do it.' A taxpayer's contention that he was deprived of due process of law where his only remedy was to appeal to the Commissioner of Internal Revenue after the payment of the tax was held to be entirely lacking in merit in *Dodge* v. *Osborn,* 240 U.S. 118, 122 [36 S.Ct. 275, 60 L.Ed. 557]."

We conclude that the requirement of the Motor Vehicle Fuel License Tax Law of the deposit of security in an amount equivalent to the amount of the jeopardy determination as a condition for redetermination by the board, or, in the alternative, a payment of the jeopardy determination under protest as a condition for judicial review in an action for refund, is not a denial of due process. Any other condition would permit a person engaged in the distribution of motor vehicle fuel to refrain from securing a license and the posting of a bond, collect the taxes from his customers, compel the board to discover such violation and then to ascertain as best it can the tax collected and due from the distributor and then permit such unlicensed distributor without payment of the tax or security for its payment to contest the claim

of the state in proceedings initiated by it to collect such tax. In short, it would relegate the state to the position of an individual seeking to collect a civil debt.

### Right to Judicial Review by Suit for Refund Satisfies Due Process

An examination of the Motor Vehicle Fuel License Tax Law reveals that the Legislature has provided alternative remedies for challenging the propriety of an assessment made by the board under the law. First, the Legislature has provided for administrative review, as we have previously pointed out, by the filing of a petition for redetermination (§§ 7710 and 7711). In the case of jeopardy determinations, security as deemed necessary by the board is required (§ 7700). As an alternative remedy, in sections 8126 through 8131, the Legislature has provided for a claim for refund, and by sections 8146 through 8152 for suit for refund after payment under protest. That a taxpayer who has not exhausted his administrative remedies is not precluded from pursuing the alternative remedy of a suit for refund after payment under protest is established by *Scripps etc. Hospital* v. *California Emp. Com.*, 24 Cal.2d 669, 673-674 [151 P.2d 109, 155 A.L.R. 360].

That an opportunity for hearing an action for refund of taxes paid under protest satisfies the constitutional requirement of ''due process,'' appears to be established. In *People* v. *Santa Fe Federal S. & L. Assn.*, 28 Cal.2d 675 [171 P.2d 713], the Supreme Court says at page 681: ''Constitutional requirements are met if a taxpayer is given an opportunity for a hearing in subsequent proceedings for collection of the tax or in an action for a refund where it is provided by the statute that he may pay the tax under protest and sue for its recovery.'' In *Modern Barber Colleges* v. *California Emp. Stab. Com.*, *supra*, 31 Cal.2d 720, the court said at page 726: ''The power of a state to provide the remedy of suit to recover alleged overpayments as the exclusive means of judicial review of tax proceedings has long been unquestioned.'' *Morris Plan Co.* v. *State*, 73 Cal.App.2d 415, 420 [166 P.2d 627]: ''The exigencies of the governmental process in tax matters are paramount, and procedural 'due process of law' is satisfied if at some time, whether in a suit for collection, or subsequent to collection in a suit for a refund of taxes paid under protest, the taxpayer is permitted a hearing.'' *Exchange Oil Co.* v. *State*, 80 Okla. 52 [193 P. 999, 1002]: ''It

is settled law, that the Legislature may properly provide for the payment of a tax as a condition precedent to testing its correctness and validity." (Accord: *Snyder* v. *Marks,* 109 U.S. 189 [27 L.Ed. 901, 3 S.Ct. 157]; *Richford Sav. Bank & Trust Co.* v. *Thomas,* 111 Vt. 393 [17 A.2d 239]; *Powell* v. *Gleason,* 50 Ariz. 542 [74 P.2d 47, 114 A.L.R. 838].

In *Fort* v. *Dixie Oil Co.,* 170 Tenn. 183 [93 S.W.2d 1260], the Supreme Court of Tennessee held that a levy of a distress warrant issued without notice on property of a gasoline company in aid of collection of gasoline excise tax assessed against the company could not be restrained where the company contended that the tax was excessive, since the only remedy of a dissatisfied taxpayer in such instance is to pay the tax under protest and sue for recovery thereof.

It follows that the defendant in the instant case not only had the opportunity for a redetermination by the board, had he posted security required by the act and fixed by the board, but also he had the alternative opportunity of judicial review by payment of the jeopardy determination under protest and suit for refund thereof.

The act having expressly provided for a suit for refund after payment under protest and the right to raise in such action the ground of illegality stated in the protest (§ 8149), the defendant cannot assert a denial of due process because of the requirement of security as a condition for administrative review for the reason that he would not have been deprived of due process had no administrative review been provided and his only opportunity to be heard been limited to a suit for refund after payment under protest.

### Financial Inability as Excusing Exhaustion of Administrative Remedy

Throughout defendant's briefs runs the recurring contention that because the court found that he was financially unable on a given date to deposit the security fixed by the board as a condition to a hearing for redetermination, he should be excused from exhausting his administrative remedies and be permitted to contest the tax in the action brought by the state on the jeopardy determination. Defendant phrases this contention in his statement of "Issues" as follows: "Can the Legislature and the Board of Equalization compel courts to restrict due process in tax cases to the wealthy?" This, logicians refer to as "argumentum ad misericordium," an appeal to pity. This is of course a contention which could be made against any tax and can have no rele-

vancy here. A similar contention was advanced in *Modern Barber Colleges* v. *California Emp. Stab. Com.*, *supra*, 31 Cal.2d 720, and thus answered at page 732: "It would be strange indeed if this court were to sanction a practice whereby a taxpayer could regularly refrain from paying taxes, the obligation of which he disputes, and then urge that, by reason of his large delinquency, the ordinary remedies provided for reviewing his liability are inadequate in his particular case."

## Sufficiency of Evidence

Defendant's final contention is that the state failed to offer any proof that he was a distributor. The state was not required so to do. Section 7730 expressly provides that a certified copy of the jeopardy determination shall be prima facie evidence that the unlicensed distributor is indebted to the state in the amount of the license tax, penalties and interest computed as prescribed by section 7706. In addition, section 7981 (later repealed and reenacted in substance as § 7865) provides that in any suit brought to enforce the rights of the state a certified copy of the notice of determination shall be prima facie evidence of the fact of determination, the indebtedness of the distributor to the state in the amount appearing in the notice and the full compliance with administrative duties as required by law. These sections make it clear that the certificate when introduced into evidence makes out the state's case in a proceeding to collect the tax. This has been so established with respect to similar statutes in other state taxing laws in *People* v. *Schwartz*, 31 Cal.2d 59 [187 P.2d 12] and *People* v. *Mahoney*, 13 Cal.2d 729 [91 P.2d 1029]. While it is true that the trial court precluded the defendant from rebutting the prima facie case of the state, this was only because the defendant had failed to exhaust his administrative remedies. The rule of exhaustion of administrative remedies applies with equal force in an attempt to defend against an action for collection of the tax, as was held in *People* v. *Henrickson-Pontiac, Inc.*, 9 Ill.2d 250 [137 N.E. 2d 381, at 386]: "[A] taxpayer cannot defend an action for collection of a delinquent tax, on the ground of irregularities in assessment or revaluation, without having first exhausted his statutory remedies to seek revision of the assessment." Any other rule would completely nullify the doctrine of exhaustion of administrative remedy.

Judgment affirmed.

Fox, P. J., and Ashburn, J., concurred.